### HENDRICKS *v.* DANIELS.

(*Common Pleas of New York City and County, General Term.* June 6, 1892.)

1. REAL-ESTATE BROKERS—SALE THROUGH ANOTHER BROKER—COMMISSIONS.
    The owner of property who employs a broker to sell it at a specified price is not liable to such broker for commissions if, on the failure of the broker to procure a purchaser, the owner withdraws the property from him, and sells it at a less price through another broker, even though the purchaser has been negotiating with the first broker.

2. SAME—RIGHT TO SELL THROUGH ANOTHER BROKER.
    If the second broker, without any interference on the part of the owner, procures a purchaser, the owner has the right to sell to such purchaser, notwithstanding the transaction with the first broker.

3. APPEAL—HARMLESS ERROR.
    Where, in an action by the first broker's assignor to recover commissions, there was no evidence of bad faith on the owner's part, plaintiff cannot complain of a charge leaving the question of bad faith to the jury.

Appeal from ninth district court.

Action by Samuel E. Hendricks, as assignee of Carl Randrup, against George S. Daniels, to recover $100 as commission for procuring a purchaser for cer-

tain property belonging to defendant. From a judgment entered on a verdict for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Wm. C. Reddy,* for appellant. *George S. Daniels, in pro. per.*

DALY, C. J. Defendant employed plaintiff's assignor, Randrup, a real-estate broker, early in April, 1890, to sell his two houses for $4,250 each. Randrup offered one of them on July 25th to one Roland, who proposed to take it providing he could get possession at a date named, and upon certain terms and conditions as to payment, and who reserved his decision until the next day, promising to notify Randrup then whether he would take the house, and, if he decided to take it, agreeing to meet Randrup on the Monday following to go to defendant's office and close the transaction. Randrup immediately notified defendant by letter of all the above facts, and defendant agreed to the conditions proposed by the purchaser. The latter, however, did not communicate with Randrup as promised, nor meet him nor the defendant on Monday as agreed. The next day, Tuesday, in the afternoon, the defendant received an offer for a less sum for another broker, named Dowd. He then went to Randrup, and asked him what had become of his customer. Randrup said that he had not seen him since Friday, and he presumed the matter had been dropped, as he was at that time uncertain whether to take the house or not. Defendant told Randrup that he had called because he had received a less offer through another broker, and he intended to take that offer unless the previous one was accepted. Randrup replied that he claimed a commission if the defendant sold to any one who had seen him. The defendant answered that he would not pay a commission to Randrup unless the latter procured a purchaser at his price, and that if another broker offered a customer at a price he thought satisfactory he would take the offer. Randrup then gave defendant a card with the names of the persons who had been to see him and as to whom he claimed a commission. Among them was the name of Roland. The next day Randrup called on defendant, and told him he had learned that Roland was the customer who had made the offer of a less sum through the other broker. The defendant said that he would sell the house to any one who would procure him a customer. The same day Roland was brought to defendant by Dowd, and the sale was made for $4,050. It is claimed by plaintiff that Randrup's negotiations with Roland were the procuring cause of the sale to the latter, and that the defendant is bound to pay the agreed commission because he took the negotiations out of the broker's hands and concluded them himself. If the facts sustain this view of the defendant's conduct the plaintiff would have been entitled to recover. The latter's theory is that the defendant in effect prevented the plaintiff's assignor from earning his commissions by interfering with his negotiations. But according to defendant's testimony (which, we must assume from the verdict in his favor, the jury believed) Randrup had abandoned his negotiations with Roland before the defendant accepted the lower price from the latter. It also appeared from the testimony of the purchaser that he had withdrawn from the negotiations with Randrup because the price named was too high, and Randrup had stated that there would be no abatement of the sum named. Randrup told the defendant that he presumed the matter was dropped. Upon this state of facts defendant was free to accept the services of another broker, or to negotiate with Roland and to take the best price he could get for his property. Randrup had failed in his effort to procure a purchaser at the price named by defendant, and, having given the latter the impression that his negotiations were at an end, is not entitled to commission, though the sale was afterwards made to the same party. *Sibbald* v. *Iron Co.,* 83 N. Y. 378; *Wylie* v. *Bank,* 61 N. Y. 416. It did not affect the right of the defend-

ant to open negotiations with a purchaser that plaintiff's assignor notified him that he would claim a commission if the property were sold to that party. There was no notice to the defendant that Randrup was still negotiating with the party; on the contrary, the notice was in effect that the negotiations were at an end. The defendant's version of the transaction, which, as we have said, was accepted by the jury, shows that this was not a case in which the employer, without terminating the broker's agency, took the negotiations into his own hands. *Martin* v. *Silliman,* 53 N. Y. 615; *Briggs* v. *Boyd,* 56 N. Y. 294; *Morgan* v. *Mason,* 4 E. D. Smith, 639. The reason why Randrup's negotiation with Roland failed was that, while the latter was considering the purchase, he was approached by another broker with the suggestion that he could get the property at a lower price. The defendant was not in any manner responsible for the acts of the other broker, nor for the customer's change of mind. It is not conceivable that he would interfere for the purpose of getting $4,050 for his property when, if he had permitted the negotiations to proceed, he might have obtained $200 more. He seems to have acted in entire good faith, and the verdict of the jury is fully sustained by the evidence. The exceptions taken by the plaintiff do not call for reversal. The change by the court "that, if Dowd procured a purchaser without any interference on the part of defendant, defendant had the right to conclude a contract notwithstanding the previous transactions with Randrup," was entirely correct. The modification of plaintiff's request "that the broker who first calls the attention of the purchaser to the property and negotiates with him for sale is *prima facie* the procuring cause of the subsequent sale, unless the parties in good faith withdraw from the negotiations and abandon the proposed purchase and sale prior to a subsequent renewal of negotiations," by the addition "unless the party sells by another broker in good faith," states correctly the general rule. The plaintiff's exception to the court's leaving the question of bad faith on the part of the defendant to the jury was not well taken. It was more favorable to the plaintiff than the proof warranted, because there was no evidence of bad faith on defendant's part. The evidence of the commissions paid to the other broker could not have affected the result, and possibly the admission of this proof was not improper on the question of good faith. Judgment and order appealed from affirmed, with costs.

All concur.