(13 Misc. Rep. 117.)

### ATWATER v. WILSON et al.

(Common Pleas of New York City and County, General Term. June 3, 1895.)

FACTORS AND BROKERS—COMMISSIONS.

    In an action by a broker for commissions it appeared that plaintiff had the property in his hands for sale for nearly three years, during which time he frequently advertised it at his own expense; that he visited the property several times in endeavoring to sell it, and for many months negotiated with one B. At last B. offered plaintiff $500 if he would buy the property for him at his own price, which plaintiff refused to undertake. Plaintiff testified that B. then made an offer for the property, which he reported to defendant. Meanwhile B. had employed another broker to buy the property for him at his price, in which he succeeded. *Held,* that the evidence was sufficient to sustain a finding that plaintiff was the procuring cause of the sale.

Appeal from city court, general term.

Action by Theron S. Atwater against Edward C. Wilson and others. From a judgment of the city court (30 N. Y. Supp. 1129) affirming a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

Smith Lent, for appellants.
Alfred B. Cruikshank, for respondent.

GIEGERICH, J. This action was brought to recover broker's commissions on the sale of certain real property situated at Peekskill, Westchester county, N. Y., and by consent was referred to a referee, who found in favor of the plaintiff. The judgment entered upon the referee's report having been affirmed by the general term of the city court of New York, the defendants appealed to this court. The principal questions presented for solution upon this appeal are whether there was any evidence (1) that the plaintiff was the procuring cause of the sale, and (2) that his agency continued to the time of the sale. It appears from the undisputed evidence that the plaintiff had the property in his hands for sale for a period of nearly three years;

that he advertised it at his own expense about twenty times in the New York papers during that period; that he visited the property three times with a view of selling it; that he first called the attention of one Henry W. Bates to it, and for many months continued the negotiations in an effort to "work Bates up" to the defendants' terms. At last, after various proposals and withdrawals, not necessary to recount, Bates offered the plaintiff $500 if he would buy the property for him for $27,500, which offer the plaintiff most properly refused; but asked Bates to make it an offer of $28,000. Plaintiff testified that Bates agreed to this, which Bates denied; but it appears from the undisputed evidence that a short time after this interview the plaintiff reported an offer of $28,000 to the defendants, who were at the time asking $30,000. Meanwhile Bates, according to his own testimony, "asked another broker to buy it for me [him] for $27,000," coupling the request with a promise of $500 to the so-called broker Crouch, who it seems was really an attorney at law. The course of the transaction immediately thereafter is shown by a letter from the defendant Wilson to the defendant Hobby under date of March 2, 1893, from which the following is an extract:

"Mr. Crouch knows a party who will give $27,000 for the farm if we are willing to sell it at that. * * * Mr. Crouch will go to see him if we will allow him the 2½ per cent. commissions. * * * I have signed a contract in case you think it advisable to sell, so that Mr. Crouch can see his party at once, which he agreed to do in case we accepted the offer."

Naturally Bates did not stand to his offer of $28,000, as it had been learned by his agent, Crouch, that the less offer, made through the intermediation of Ingersoll, would be accepted by the defendants if the sale could not be made at $28,000. Under the circumstances, we think there was sufficient evidence to support the conclusion of the referee. Bates was an intending purchaser, whom the plaintiff had procured, and on whom he had long worked to create such a desire for the property that an offer satisfactory to the defendants might result. That his efforts were successful is evident from the fact that Bates, after failing to induce the plaintiff by the offer of $500 to use his influence in securing the property at a lower figure than his employers, the defendants, were asking, so far as his latest information disclosed, engaged another to make the purchase. Bates took the initiative, and selected his own agent and intermediaries, Crouch, Ingersoll, and Freeman, who acted for him, and the purchase was as much his act as though performed by him directly. The fact that a sale is finally made by the owners directly to the purchaser is not alone effectual to defeat the broker's claim to commissions (Lloyd v. Matthews, 51 N. Y. 124; Martin v. Silliman, 53 N. Y. 615; Hanford v. Shapter, 4 Daly, 243); nor does the fact that the price obtained was not what the broker was instructed to procure have that effect (Gold v. Serrell, 6 Misc. Rep. 124, 26 N. Y. Supp. 5; Levy v. Coogan, 16 Daly, 137, 9 N. Y. Supp. 534; Baker v. Thomas [Com. Pl., Gen. Term, May 6; 1895] 33 N. Y. Supp. 613.) This case is distinguishable from Sibbald v. Iron Co., 83 N. Y. 378, where the plaintiff's agency had been unmistakably terminated by the defendants in good

faith, and for good cause.    Here we do not think that the evidence necessarily shows such a termination.    True, one of the defendants testified that he thought they told the plaintiff they had an offer that they were going to accept.    But this is not as strong as the somewhat similar evidence in Hendricks v. Daniels (Com. Pl. N. Y.) 19 N. Y. Supp. 414, where the principal told the broker that he was about to accept another offer unless the broker produce a certain purchaser who had been negotiating and had made an offer which the principal was willing to accept, but who had failed to appear and close the transaction as promised.    The broker answered that "he had not seen him since Friday, and he presumed the matter had been dropped," and at the same time said "he claimed a commission if the defendant sold to any one who had seen him."    Chief Judge Daly, who spoke for the court, said:

"There was no notice to the defendant that Raudrup [the broker] was still negotiating with the party.    On the contrary, the notice was, in effect, that the negotiations were at an end."

Besides, it should not pass unobserved that the latter case was an affirmance of a judgment entered upon the verdict of a jury, while this is a case in which a conclusion that there was a termination of the agency would lead to a reversal of a judgment affirmed by the general term of the city court of New York, a case in which we are only to inquire whether there is any evidence to support the judgment.    Gold v. Serrell, supra.    The evidence in this case is, we think, susceptible of contrary inferences as to the termination of the agency.    The defendants did tell the plaintiff that they were about to accept another offer unless he produced his purchaser; but there had been so many proposals and counter proposals, offers, withdrawals, and refusals, notwithstanding which the plaintiff's agency continued uninterrupted, that we think the referee and the court below were warranted, in view of all the facts, in inferring that there was no intention to terminate the agency.    Winans v. Jaques, 10 Daly, 487, which was a reversal of a judgment entered upon the verdict of a jury, is hard to distinguish from the present case.    There the circumstances were as follows:  Stevenson, plaintiff's assignor, was a real-estate broker employed by the defendant to sell certain premises in the city of New York.    He found a Mrs. Gill, who wanted such property.    She told her husband of it, and he informed another broker, his friend, of the facts.    That broker secured one Sewell to make the purchase on behalf of Mrs. Gill, to whom Sewell assigned his contract, and to whom the defendant conveyed the property.    Before such conveyance the defendant objected that some claim might be made by another broker for commissions, but was assured that no such claim could be made, and that the law required him to make the deed to the assignee of the contract.    Judge Van Brunt, in speaking for the court, said:

"* * * It would appear as though it was a scheme upon the part of Mr. Gill to defraud Mr. Stevenson out of his commissions, and enable his friend Mr. Griswold to make such commissions. It may be unfortunate that the defendant in this action has been victimized by such a scheme, but that misfortune cannot deprive the plaintiff in this action of his right to recover."

The above case cannot be distinguished from the present, even in the circumstance that the defendant had notice before the convey-ance was made that the real purchaser was one whom the plaintiff had secured. The plaintiff here testified that he stated to the defendants that the other offer they were considering was from Bates, and his testimony is uncontradicted. This case is unlike Baker v. Thomas, supra. There an interval of two months elapsed between the last act of the plaintiff and the sale, which was then made through a different broker. Here there is no room for a presumption of the intervening and efficient agency of any other. The only broker, so far as appears from the evidence, employed by the defend-ants, and who negotiated between them and Bates, was the plaintiff. He remained steadfastly loyal to their interests, and the customer whom he had found purchased the property through his own agents. The judgment wrought no hardship upon the defendants. They were not even exposed to the payment of double commissions, as in Winans v. Jaques, supra, because Crouch could not enforce a claim against them if they were unaware that he had been paid by Bates to act for him. Condit v. Sill (Com. Pl. N. Y.) 18 N. Y. Supp. 97, and citations. For these reasons the judgment should be affirmed, with costs. All concur.