### WILLARD v. FERGUSON.

(Supreme Court, Appellate Division, First Department. May 22, 1908.)

1. BROKERS—ACTION FOR COMMISSIONS—EMPLOYMENT—EVIDENCE.

Plaintiff, in an action by a broker for commissions for sale of an office·
building, had for nine years been defendant's agent for handling certain
real estate for him. He claimed that authority, never revoked, to sell the·
building, which defendant denied having ever been given him, was re-
ceived by him five years before the sale. Four years before the sale
they had an agreement as to plaintiff managing this and other property
of defendant; and plaintiff wrote defendant a letter reciting that, in ac-
cordance with their conversation of that day, he thereby stated his un-
derstanding of their agreement as to the commissions he was entitled to
for the management of defendant's properties; the one in question, with
another, being named, following which were the terms of commissions and'
the duties to be performed, with no statement, however, in respect to·
sales. Defendant's letter in reply stated that plaintiff's letter was practi-
cally correct, then gave the detailed terms of employment of plaintiff as·
agent, and concluded: "This arrangement is not to be considered as in-
cluding the sale of the property. I reserve the right to deal direct in
case of a sale." *Held*, that defendant was entitled to have both letters
introduced in evidence on the question of employment, and that it was·
not enough to admit the concluding paragraph of defendant's letter; it
.losing much of its effect standing alone.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 112.]

2. SAME—INDUCING CAUSE OF SALE—EVIDENCE.

Evidence in an action by a broker for commissions *held* insufficient to
show that he was the inducing cause of the sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 116,
117.]

Houghton and Scott, JJ., dissenting.

Appeal from Trial Term.

Action by Eugene S. Willard, doing business as E. S. Willard &
Co., against John W. Ferguson, for a broker's commission on a sale
of real estate. From a judgment on a verdict for plaintiff, and from
an, order denying a motion for new trial, defendant appeals. Re-
versed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGH-
TON, and SCOTT, JJ.

Blair & Rudd (John N. Blair, of counsel), for appellant.
H. A. & C. E. Heydt (C. Glenn Worden, of counsel), for respondent.

CLARKE, J. The complaint alleges that the plaintiff is a real'
estate broker and agent; that as such real estate broker and.

agent he was employed and retained by the defendant to manage and control on behalf of said defendant the premises known as 135 Fifth avenue, borough of Manhattan, city of New York, of which premises defendant is the owner of record; and further received due authority about five years ago from the defendant (and unrevoked) to offer said premises for sale and to obtain a purchaser therefor, directly or indirectly, for which the plaintiff was to receive a commission of 1 per cent. of such sale price as the defendant promised and agreed. The complaint was verified on the 12th day of June, 1907, which would fix the date of the authority alleged to have been received "about five years ago" in the year 1902. The complaint was amended upon the trial by striking out the words "as the defendant promised and agreed," and inserting in lieu thereof "for which the plaintiff was to receive the customary commission of 1 per cent." The complaint further alleged the sale of the premises to the Century Bank through the efforts of the plaintiff for the sum of $400,000, and demanded judgment for his commission thereon, to wit, $4,000.

In order to recover upon a claim for broker's commissions, the broker must establish the employment. Commencing in 1898, the plaintiff had acted as agent for the defendant in the management of certain real estate owned by the defendant. The defendant denied employing the plaintiff to sell. The plaintiff alleged a specific employment in 1902 which continued unrevoked. He testified as follows:

"I am certain that the conversation that I had in mind in this complaint took place in the year 1902. It didn't take place in 1903. There were others, perhaps, in 1903. I am certain that I had a conversation which resulted in a contract by which I was employed to sell this property in 1902, and that has not been revoked."

The defendant offered in evidence a letter from the plaintiff, dated June 26, 1903, which states:

"In accordance with our conversation today, I beg to state hereby my understanding of our agreement as to the commissions we are entitled to for the management of your properties, now in our charge, being 135 Fifth avenue and 812 Greenwich street."

Then follows the terms of the commissions and the duties to be performed with no statement, however, in respect to sales. To this the defendant replied by letter of June 29, 1903:

"Referring to your favor of the 26th instant, in reference to the commissions, etc., of handling my property at 135 Fifth avenue and 812–814 Greenwich street, New York City, I hereby confirm what I said to you the other day, which is practically the same as noted in your letter."

Then follows a statement of the detailed terms of employment of the defendant as agent, winding up with this clause:

"This arrangement is not to be considered as including the sale of the property, I reserving the right to deal direct in case of a sale."

These two letters were offered in evidence by the defendant and excluded by the court upon objection, except the clause above quoted, which the court admitted. Exception was duly taken to the refusal to admit the two letters. Bearing in mind that the plaintiff and

defendant had since 1898 occupied the mutual relation of principal and agent for certain purposes, and that the plaintiff alleged a specific contract of employment as a broker to sell in 1902, which remained unrevoked from that time to the transaction in 1907, the subject of this action, which contract of employment the defendant denied, and that these letters with careful and precise detail set forth the exact terms of the employment between the parties, and expressly excluded the selling of the property, and reserved the right to deal therein to the defendant. I think it was error to exclude the whole of the letters, which was not cured by the admission of the one paragraph in regard to sales.

As the plaintiff's case upon the making of the contract alleged in the complaint depended solely upon his own evidence, which was controverted by the evidence of the defendant, the defendant was entitled to have the whole of this correspondence submitted to the jury, for the purpose of showing the exact relations existing between the parties one year after the alleged contract. The paragraph admitted in evidence, standing by itself, loses much of its effect when deprived of its context. The defendant had the right, it seems to me, to present all the facts from which it might have been argued that so careful an expression and limitation of the entire relation existing between the parties excluded the probability of the continued existence of the alleged verbal contract of employment to sell made in 1902. I know of no principle which permits the admission in evidence of an isolated paragraph of a contract, to the exclusion of the whole paper, which may explain, modify, or affect the isolated paragraph admitted.

The broker has the burden of proving not only his employment, but that he was the inducing cause of the sale; that he procured a purchaser ready, able, and willing to take upon the terms propounded by the seller. He did not introduce the purchaser to the seller. The purchaser, the Century Bank, and its president, Mr. Chapman, had been tenants of the defendant in the building sold for some six years prior to the sale. The defendant resided in Paterson, N. J. On the 4th of February, 1907, he happened to be in the office of the plaintiff and saw his clerk in reference to certain papers in connection with another property. He said to that clerk:

"If the opportunity presented itself, I should call and see Mr. Chapman, or see the Century Bank, as I consider them the logical buyers of the property, because they were the tenants. He did not ask me what price I was going to ask the Century Bank for it, and I did not tell him. The subject of the price or terms was not discussed between us. No suggestion was made either by me or Mr. Bang that he should undertake a negotiation with the Century Bank at that time, or that Mr. Willard should."

Four days thereafter, on the 8th of February, Mr. Bang saw Mr. Chapman, and told him that he (Bang) had "every reason to think that Mr. Ferguson was anxious to sell and that we could get the price right." The defendant testified that the first that he learned of Mr. Bang's having undertaken the negotiation with the Century Bank was about the 7th of May, when he called on Mr. Chapman. At that interview the defendant told Mr. Chapman that the property was for

sale, and that he thought the bank was the logical buyer, and named. a price of $425,000, and that then Chapman had told him that Bang had called on him, and had afterwards written him, giving him a. statement of the leases and the probable revenue on the property. Thereafter, on the 21st of May, the plaintiff telephoned to the defendant, stating that he had an offer of $375,000 cash from the Century Bank for the property. "I told him there was no use of his talking about that price, because I would not consider it; that the lowest price that I would take for the property was $425,000. I told him at that time that I had seen the Century Bank earlier in May with reference to it, but that I had not heard from them since." The plaintiff testified that he saw Mr. Chapman on the 24th day of May. "I told Mr. Chapman that I was perfectly certain that Mr. Ferguson would accept $400,000 as a compromise figure, midway between the two, if he would allow me to make the offer in his name." Mr. Chapman testified that at that interview Willard said that he had made this offer of $375,000 to Mr. Ferguson and that Mr. Ferguson would not accept it, "and I said to Mr. Willard that the thing for him to do was to try to get Mr. Ferguson to accept our price, instead of trying to get us to accept his price, and he talked to me for quite a while, but we ended at practically nothing. I think something was said about $400,000, as a compromise between his price and ours, and I said to Mr. Willard we would not consider that. There was no use of his trying to work on that. He said, in substance, that he could not do anything more—could not do anything further." So that up to this time the bank had offered $375,000, and Ferguson had said he would take $425,000. The plaintiff had not succeeded in getting Mr. Chapman up to the defendant's figures, and does not seem to have exerted himself to that end, but upon his own testimony to have been endeavoring to get Mr. Ferguson to come down, while now claiming to have been employed by Ferguson, and owing loyalty and duty to him, he yet testifies:

"I told Mr. Chapman that I was perfectly certain that Mr. Ferguson would accept $400,000. I am going to see Mr. Ferguson. I am going to get him to say so, or at least get it so far that you will have to buy this at $400,000."

And this in view of the fact that on May 27th he wrote to Mr. Ferguson:

"I have been using my best endeavors to bring the Century Bank people up to the figures you have mentioned as being the lowest for 135 Fifth avenue, but have not met with success."

Thereafter in June Mr. Ferguson had a personal interview with Mr. Chapman, and after going over the building together, and certain defects having been pointed out by Chapman to Ferguson, they agreed upon a sale at $400,000. The defendant testified positively that the plaintiff never brought him an offer for this property for more than $375,000.

It seems to me that a verdict based upon the proposition that the plaintiff was the inducing cause of this sale to a purchaser procured by him upon the terms propounded by the defendant is against the weight of evidence. He was not employed to negotiate this particular sale. He

did not introduce the purchaser. The first suggestion came from the defendant, in an incidental talk to the plaintiff's employés, that the bank was the logical buyer. Thereupon the plaintiff seems to have been stirred up to voluntary interposition, unknown to the defendant, until he had proceeded upon his own initiative to begin direct negotiations with the president of the bank. The broker never succeeded in bringing the bank up to the terms which the defendant declared to him were his lowest figures. After his efforts had failed, the principals got together in continuation of the negotiations which had been begun between themselves, and finally came to an agreement. I do not think, upon these facts, that the plaintiff has sustained the burden put upon him.

The judgment and order appealed from should therefore be reversed, with costs to the appellant to abide the event.

INGRAHAM and LAUGHLIN, JJ., concur. HOUGHTON and SCOTT, JJ., dissent.