### BOYD v. IMPROVED PROPERTY HOLDING CO.

(Supreme Court, Appellate Division, First Department. December 31, 1909.)

1. BROKERS (§§ 53, 54*)—RIGHT TO COMMISSIONS.

   Before a broker is entitled to his commissions, he must produce a purchaser ready and willing to contract upon his employer's terms; and the sale must proceed from his efforts acting as broker.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 74–81; Dec. Dig. §§ 53, 54.*]

2. BROKERS (§ 53*)—RIGHT TO COMMISSIONS.

   Where a broker had spoken of defendant's building to a prospective tenant, but had refused to give defendant any information as to the proposed tenant sufficient to identify him, and made no lease, and subsequent negotiations instituted by defendant with the prospective tenant resulted in the final lease of the premises to him, which had no connection with the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

broker, the broker was not entitled to commissions as the procuring cause of the lease.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 53.*]

3. BROKERS (§ 56*)—RIGHT TO COMMISSIONS.

Where a broker called the attention of a prospective tenant to defendant's building, and had some conversation with him about the building, and also spoke to defendant on the subject, but negotiations had been commenced in relation to it before the broker interfered, and the lease was entirely the result of negotiations between defendant and the tenant, in relation to which the broker performed no services, he was not entitled to commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 85–89; Dec. Dig. § 56.*]

Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by T. Sherwood Boyd against the Improved Property Holding Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

George Hahn, for appellant.
George F. Hurd, for respondent.

INGRAHAM, J.   The plaintiff has recovered in this action for services alleged to have been rendered by him in procuring tenants for a building owned by the defendant. The complaint alleges that the defendant is indebted to the plaintiff in the sum of $2,500 for work, labor, and services done and performed by the plaintiff for the defendant at its special interest and request as broker in procuring tenants for the building and premises owned by defendant and known as No. 341 Fifth avenue. Plaintiff testified that he was a real estate broker and he called on Mr. Corn, the president of the defendant, in the spring of 1906, and asked him what places he had to rent, and Corn said he was going to erect a building at No. 341 Fifth avenue; that plaintiff received a booklet of the building from Corn, and Corn "incidentally said to me, in case I was not too busy at any time, if I knew anybody that wanted a good thing or wanted a fine location, why, just kind of mention his name to him, and he would take care of him and call and see him, and I would get my commission just the same in case the deal was closed"; that prior to that time the plaintiff had not known Mr. Corn personally; that at that time the defendant was excavating the plot at No. 341 Fifth avenue, but no portion of the building had then been erected. Plaintiff further testified that at a subsequent time to the interview with Corn he met a Mr. Angelo, who was president of the Harry Angelo Company, and asked him if he wished to move; that he showed the booklet to Angelo, and explained the whole thing to him; that he stated to Angelo that the rent for the first two floors of this building was to be $27,500 and Angelo said that was too high; that he might possibly go as high as $15,000, if he got the space he wanted, when plaintiff said he would see Mr.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Corn and see if he could do anything better; that Angelo then said: "All right, but I don't want you to use my name in any way;" that subsequently the plaintiff told Corn that he thought he had a person who might be interested in some space in his building at No. 341 Fifth avenue; that this person was not willing to pay $27,500 for the two floors, but that he should judge that he would be willing to pay $15,-000; that Corn said he could not let them at that price, and suggested that the plaintiff's customer take the upper floors, and plaintiff said he would go back and see if he could do anything on that basis; that he again called to see Angelo and made this offer for the upper floors when Angelo said he would not agree to it, but afterwards said he might consider it if he got it around the price he wanted to pay; the plaintiff again saw Corn, who asked the plaintiff who his man was, and plaintiff said he could not tell him the man's name because the plaintiff had been expressly told not to give his name; that Corn then said if he knew the man or his business he might make some concession, but would have to know the man first. After some further conversation, the matter was then dropped, Angelo went to Europe, and in September, when he returned, the plaintiff tried to have an interview with him, and failed. The plaintiff went to see Angelo again in October, when he found Corn in his office, talking to him. The plaintiff said nothing more about the lease to Angelo, but called on Corn and told him he understood that he had been to see Angelo, to which Corn said: "You are not in on that."

Angelo was called as a witness for the plaintiff, and testified that in the early part of April, 1906, the plaintiff called his attention to this building in course of construction, and stated some prices for space in the building, bringing to Angelo the plans of the building; that he requested the plaintiff not to divulge his name to the owner of the building; that in the beginning of October Corn called on Angelo, said that he had heard that Angelo was anticipating a move uptown, and brought to Angelo's attention the building at No. 341 Fifth avenue, of which he produced the plans. Angelo said he had had these plans before from the plaintiff. While this interview was proceeding in Angelo's office, the plaintiff called, but Angelo refused to see him. Angelo and Corn had further interviews in regard to the building and after considerable negotiations the lease was made in December.

Corn testified that he first had an interview with Angelo in relation to a lease of these premises at the beginning of the year 1906; that he saw Angelo several times before he left for Europe, and again saw him on his return from Europe in the early part of October; that the plaintiff never mentioned Angelo or the Angelo Company to Corn; that the Angelo Company had been a tenant of Corn before; and that plaintiff never made Corn any offer for the property that was subsequently leased to the Angelo Company. Upon this testimony, I do not think that the plaintiff established any cause of action either upon an implied or express contract.

It is established that, before a broker can be entitled to his commissions, he must produce a purchaser who is ready and willing to enter into a contract upon his employer's terms, and this implies and in-

volves the agreement of buyer and seller and the meeting of their minds produced by the agency of the broker. The broker must be the procuring cause of the sale. He must find a purchaser, and the sale must proceed from his efforts acting as broker. Wylie v. Marine Nat. Bank, 61 N. Y. 415; Sibbald v. Bethlehem Iron Co., 83 N. Y. 381, 38 Am. Rep. 441. Here the plaintiff had absolutely no connection with the agreement that was subsequently made between the Angelo Company and the defendant. It is true that he had spoken of the building to the president of the Angelo Company, but nothing had resulted from his efforts. He had made no lease, produced no lessee, gave to the defendant no information as to the proposed tenant sufficient to identify him, but, on the contrary, refused to give the name of the tenant on whose behalf he was acting to the defendant. The negotiations which were instituted by Corn with Angelo, and which resulted in the final lease of the premises, had no connection in any way with the plaintiff. The lease would have been consummated so far as appears if the plaintiff had never existed. It is clear from the plaintiff's testimony that the efforts of the plaintiff had not the slightest influence upon the final lease that was made, and he was not, therefore, in any sense the procuring cause of the final arrangement. The plaintiff attempted to start a negotiation without informing his principal of the name of the proposed tenant which resulted in no advantage to his employer, and these services, being of no advantage to the defendant, imposed upon the defendant no obligation. What was said by Mr. Justice Clarke in Willard v. Ferguson, 125 App. Div. 868, 110 N. Y. Supp. 909, applies to this case, and clearly shows that the plaintiff was not entitled to commissions. The plaintiff testified that in his interview with Corn the latter said that, if plaintiff knew anybody that wanted a good thing or wanted a fine location, to mention his name to Corn, and he would take care of him and call to see him, and plaintiff would get his commission. Plaintiff was not entitled to recover upon this express contract, as he failed to perform the one thing that was required of him, and that was to mention the proposed tenant's name to Corn. In no aspect of the case, therefore, is plaintiff entitled to a commission for the lease of the premises to the Angelo Company.

The plaintiff also claims to have been the procuring cause of a lease to the McKnight Realty Company. Plaintiff testified that he called the attention of Mr. McKnight, who was an officer of that company, to this building, had some conversation with him about the building, and also spoke to Corn on the subject. But, in relation to this building, it is entirely clear that negotiations had been commenced in relation to it before the plaintiff interfered, and the lease was entirely the result of negotiations between Corn and McKnight, in relation to which the plaintiff performed no services. It seems to me the plaintiff was not the procuring cause of that lease, and was not entitled to commissions therefor.

I think, therefore, the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). I think the judgment should be modified by deducting $1,000 therefrom, being commissions awarded the plaintiff for the McKnight lease, but I think the plaintiff was entitled to recover $1,500 commissions for the Angelo lease.

The defendant was erecting a loft building on Fifth avenue, and desired to obtain tenants for it when completed. The prices which could be obtained for the various lofts were problematical to some extent, and the defendant was asking all that it could hope to receive, and was ready to recede from its price for the purpose of obtaining a desirable tenant. The jury were entirely justified in finding that the defendant through its president, Corn, employed the plaintiff as broker to obtain tenants for the building. There is no pretense that such authority was terminated before the Angelo Company signed its lease for the second and third lofts. The defendant gave to the plaintiff its booklet of the building and blueprints, with the tentative prices, and he took them to Mr. Angelo, the president of the Angelo Company and explained to him the building and its desirability for the business of his company, and asked him to lease some part of the same. Mr. Angelo informed him that the price was too high, and that if he could get such space as he wanted for about $15,000 per year, for a term of 10 years, he would think very seriously of making a change. This was the first that Angelo had ever heard of the property, or had had any idea of leasing it. The plaintiff told him that he would see what could be done with respect to price, and communicated with Corn upon the subject. Angelo had said that he did not want to be bothered with brokers, and did not want it to be known that he contemplated making a change, and therefore asked the plaintiff to withhold his name. When the plaintiff interviewed Corn, he asked for the name of the proposed tenant, and the plaintiff told him that he had promised not to mention it, but described his location and business. Corn thereupon had an interview with Angelo, which resulted in the defendant giving to him a 10-year lease at $15,000 per year. At the first interview which Corn had with Angelo, Angelo informed him that the plaintiff had first called his attention to the desirability of the building and had furnished him with blueprints thereof, and, when the lease was finally made, Corn, as president of the defendant, promised to take care of plaintiff's commission.

It is true that Corn denies all this, but the jury was entirely justified in finding that the plaintiff and Angelo told the truth, and that Corn did not.

I cannot see how it can be said, as matter of law, under such circumstances, that the plaintiff did not procure a satisfactory tenant for the defendant at a satisfactory price. The tenant surely was satisfactory, for the defendant accepted him, and the price was satisfactory because the defendant agreed to it. The tenant had never heard of the property when the plaintiff called his attention to it and interested him in the subject of making a lease. That the owner took the property out of the agent's hands and made the lease himself without revoking authority does not change the situation or deprive him of this commission.

To entitle a real estate broker to compensation, it is sufficient that a sale or lease is effected through his agency as its procuring cause; and, if his communications with the purchaser are the means of bringing him and the owner together, and the sale or lease results in consequence, the compensation is earned. Lloyd v. Matthews, 51 N. Y. 124. It is only where authority is properly revoked before consummation that a broker is not entitled to his commissions. Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441; Donovan v. Weed, 182 N. Y. 43, 74 N. E. 563. The plaintiff did not forfeit his right to commissions, and the defendant was not relieved from paying them because he did not the disclose the name of the tenant which he was procuring for the defendant. The headnote in Lloyd v. Matthews, supra, is as follows:

"It is not necessary that the purchaser be made known to the owner as the broker's customer, if he is so in fact. The owner is entitled to know that the broker had been instrumental in sending the purchaser; but, when advised by the latter that he has received information of the purpose to sell and the price, it is the owner's duty to inquire whence the information was derived."

There is no question upon the evidence that the plaintiff first interested the Angelo Company, or that Mr. Angelo informed Corn at the first interview had that the plaintiff had done so.

The jury had a right to disbelieve Corn when he testified that he had never heard of the plaintiff interesting the Angelo Company as tenant, and that he himself by chance in a restaurant encountered Mr. Angelo, and called the property to his attention. The jury was justified under the facts in saying that from such description as the plaintiff gave to Corn of the business of the Angelo Company and its location he knew who the proposed tenant was, and that he personally took up the matter for the purpose of escaping the paying of commissions to the plaintiff.

With respect to the McKnight lease, I do not think the evidence sustains the conclusion that the plaintiff was the procuring cause in obtaining the McKnight Company as tenant.

There is no dispute that, if the plaintiff is entitled to any sum, he is entitled to one per cent. commission. The Angelo lease amount to $150,000 and the McKnight lease to $100,000. The commissions were therefore $1,500 and $1,000, and I think that the judgment should be modified by deducting $1,000 therefrom, and, as so modified, affirmed.