## L'ECLUSE v. FIELD.

(Supreme Court, Appellate Division, Second Department. January 10, 1913.)

BROKERS (§ 88*)—ACTION FOR COMMISSION—JURY QUESTION.

In an action for a real estate broker's commission for procuring a purchaser, a question of defendant's good faith in canceling the broker's authority to sell just before the sale was effected through another broker to a purchaser produced by plaintiff *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 121–130; Dec. Dig. § 88.*]

Appeal from Trial Term, Suffolk County.

Action by Milton L'Ecluse against Richard C. Field. From an order setting aside a verdict for plaintiff, and granting a new trial, he appeals. Reversed, and verdict reinstated.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and RICH, JJ.

Willard N. Baylis, of New York City (Frederick H. Sanborn, of New York City, on the brief), for appellant.

Edward P. Lyon, of New York City (Percival C. Smith, of New York City, on the brief), for respondent.

HIRSCHBERG, J. The appeal is from an order setting aside the verdict of a jury rendered in the plaintiff's favor. The action was instituted to recover broker's commissions alleged to have been earned by the plaintiff's assignor, a corporation of which the plaintiff was an officer, in connection with the sale of real estate owned by the defendant on Long Island. Evidence was adduced from which the jury would have been warranted in finding the following facts: The plaintiff had a client, a Mrs. Palmer, who was desirous of purchasing a home, and to whom on behalf of his corporation he showed the defendant's place. Mrs. Palmer stated that she was much pleased with the property, and offered to pay $75,000 for it. Plaintiff communicated this offer to the defendant, who refused it, but authorized the plaintiff to put the property on the corporation's books for sale at

$87,500. Thereupon the plaintiff disclosed the name of his client to the defendant because he thought he could trust the defendant, who was an old friend of his. Subsequently plaintiff succeeded in getting Mrs. Palmer to offer $80,000, which offer was also refused by the defendant. Finally, after considerable labor by the plaintiff, Mrs. Palmer, on May 6, 1910, told him that she realized that she must pay $87,500 to get the property; that she would see her adviser, a Mr. Livingston, in a few days upon his return from Atlantic City; and that, if he did not object, she believed that she would take the property at $87,500. On May 9th the defendant telephoned the plaintiff and inquired about the situation, and was then informed that Mrs. Palmer would purchase the property when Mr. Livingston returned; his return being expected the following day. On the 10th of May defendant sent plaintiff's assignor a letter, stating that, as it had been unable to sell the property, he would occupy it during the summer, and wished it withdrawn from the market. On the 11th of May the defendant authorized another broker, named Medbury, who also had been acting for Mrs. Palmer, to sell the property, giving him until the following day to effect the sale. On the 12th of May Mrs. Palmer bought the property from Medbury, who, she was informed, was the only broker authorized to offer it for sale. The price mentioned in the contract of sale was $90,000. Mrs. Palmer, however, paid only $87,500 for the property. The explanation offered on behalf of the defendant for this discrepancy is that Medbury gave Mrs. Palmer $2,500 from his commission of 5 per cent., and that the defendant received $85,500, after deducting the balance of Medbury's alleged commission, whereas, if plaintiff's assignor had sold the property for $87,500, defendant would, after deducting its commission of 2½ per cent., have received only $85,312.50. The difference of $287.50 in the transaction seems to be claimed by the respondent as the real reason for transferring the matter to Medbury, although the respondent's letter stated that he had decided to withdraw the property from the market and reside there during the summer. On the other hand, the plaintiff claimed that the sum of $90,000 was inserted in the contract of sale as a "blind," the better to effectuate the defendant's scheme to fraudulently deprive the plaintiff's assignor of its commissions on the eve of the successful termination of its efforts to induce Mrs. Palmer to purchase at the defendant's figures.

I think the determination of defendant's good faith in canceling the authority of plaintiff's assignor and almost immediately thereafter selling through Medbury to Mrs. Palmer was, on the conflicting evidence in the case, a question of fact for the jury, and that their verdict should not have been disturbed. In its opinion setting aside the verdict the learned Special Term cited the cases of Willard v. Ferguson, 125 App. Div. 868, 872, 110 N. Y. Supp. 909, Cole v. Kosch, 116 App. Div. 715, 102 N. Y. Supp. 14, and Gardner v. Pierce, 131 App. Div. 606, 116 N. Y. Supp. 155. The facts in those cases differ essentially from those herein presented. In Willard v. Ferguson, supra, the broker did not introduce the purchaser to the seller, and was not employed by the seller to negotiate the sale. In Cole v. Kosch, supra, the court merely held that the listing of the property by the

owner, with one broker, did not preclude him from offering it for sale through another. In Gardner v. Pierce, supra, the court restated the well-settled rule that a real estate broker's commissions are not earned until the broker brings the minds of the parties to an agreement for a sale upon definite terms. There it was held that an offer of $35,-000, unaccepted, did not preclude the vendor from subsequently selling his property for $75,000 to another broker. There was no fraud in the case, nor any evidence upon which a finding of fraud could have been based.

On the facts in the case at bar, the jury might have found that the withdrawal of the property from plaintiff's assignor, followed by its almost immediate sale to the same client produced by plaintiff's assignor and on the original terms of sale, was merely a dishonorable device, designed to deprive the plaintiff's assignor of its commission, or, as was well expressed by Judge Pryor in the former New York Court of Common Pleas in Ames v. McNally, 6 Misc. Rep. 93, 95, 26 N. Y. Supp. 7, 8, they might have found "that the pretended withdrawal of the property, and the subsequent sale to the very purchaser produced by plaintiffs and on substantially the terms proposed through them, were nothing more than an expedient for cheating them of their commission."

In any view which can reasonably be taken of the case, it would seem that the issue of good faith on the part of the defendant was one of fact for the jury, and not of law for the court.

The order should be reversed, with costs, and the verdict of the jury reinstated, with costs. All concur.