EVA A. ELLISON, Respondent, *v.* FRANKLIN A. CHAPPELL, Appellant.

First Department, December 31, 1917.

Principal and agent — broker's action for commissions on sale of real estate — evidence not justifying recovery — where negotiations with caretaker of property do not make her procuring cause of subsequent sale — distinction between status of established broker and caretaker of premises.

Action to recover broker's commissions for procuring a purchaser of the defendant's real estate.   It appeared that the plaintiff was employed as a caretaker of a country estate owned by the defendant and that the person who eventually purchased the property, being attracted by a sign

stating that the premises were for sale and that application should be made to a certain broker or the purchaser's own broker, entered the premises and after viewing the same had an interview with the plaintiff in which the selling price was discussed. The plaintiff thereupon sent the purchaser's card to her employer, but the actual sale of the property was made through an established real estate broker and commissions were paid to him. On all the evidence, *held*, that the plaintiff was not entitled to commissions as she did not negotiate or consummate the sale.

*Held further*, that the plaintiff did not " produce " the customer as that term is used in such transactions.

Producing a purchaser is not synonymous with merely introducing a purchaser. To produce a purchaser implies some effort or activity in discovering him, for before he can be produced he must be found.

The plaintiff in forwarding the card of the eventual purchaser was merely performing her obvious duty to her employer.

*It seems*, that an established real estate agent may " produce " a purchaser although the latter voluntarily comes to his office to inquire about property; but the situation is different when an intending purchaser attracted by the appearance of the property makes inquiry of a janitor or caretaker and leaves his card to be forwarded to the owner.

CLARKE, P. J., and PAGE, J., dissented, with opinion.

APPEAL by the defendant, Franklin A. Chappell, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of June, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 11th day of June, 1917, denying defendant's motion for a new trial made upon the minutes.

*Samuel J. Rawak* of counsel [*Cornelius C. Beekman* with him on the brief], for the appellant.

*F. Sidney Williams* of counsel [*Jordan & Williams*, attorneys], for the respondent.

SHEARN, J.:

Plaintiff brought this action to recover a broker's commission at the rate of five per cent of the purchase price of certain real property which she claimed to have sold for the defendant. Her complaint set forth two causes of action, both founded upon the same sale. One was based on an express contract and the other upon *quantum meruit*. The second cause of action was not submitted to the jury, and the verdict is based upon a finding that the contract was made as alleged and was

performed by the plaintiff, both of which allegations in the complaint were denied in the answer and controverted upon the trial. The two issues involved were (1) whether defendant employed plaintiff as a broker and (2) whether plaintiff was the procuring cause of the sale.

On the issue of employment the proof is: That plaintiff lived on property adjacent to the real property which was sold; that she was employed by defendant as a caretaker of the property sold, which is a country estate located at Bayville, L. I., and had been employed as a caretaker since January, 1915, when she succeeded her husband who died January 28, 1915, and who had been down to the time of his death similarly employed; that in August, 1915, the defendant visited the property as a result of a letter written by the plaintiff concerning its condition, and a conversation with the plaintiff ensued, plaintiff's version of which is as follows: " One word I said to him, I said, ' Mr. Chappell,' I said, ' this property is underestimated; I think it is worth a great deal more than $45,000.' 'Well,' he said,' he would be glad to sell it for $45,000.' 'Well,' I said, 'supposing I procure a purchaser, what per cent will I get?' He said, ' You will get five per cent.' I says, ' I am going to look around and see if I can't find someone,' and he said, ' Be very sure whoever you send to me, that they have not been talking with another broker first,' and he agreed to give me, if I sold the property, five per cent, providing that this man who was purchasing the property had not been talking to another broker previous to me."

Another conversation is alleged to have ensued in November, 1915, wherein defendant said, according to the plaintiff, " If I sold it he would give me five per cent." Defendant's version of the first conversation is radically different from plaintiff's and he denied the November conversation *in toto.* Without reviewing the surrounding circumstances and the various items relied upon by the parties to support their respective contentions, it is sufficient to say that the finding of the jury on the issue of the promise to pay the plaintiff five per cent if she " produced a purchaser," or, according to the November interview, if she " sold the property," is not against the weight of the evidence.

Upon the issue whether plaintiff produced a purchaser a very different situation exists. In August, 1916, a year after the contract of employment relied upon, one Thanhouser, the purchaser, while passing by the property in an automobile, was attracted to the property and, noticing signs stating that it was for sale, which signs did not give any address to which purchasers might apply, called upon a nearby hotel-keeper who directed him to the plaintiff. These signs were not put up or maintained by the plaintiff. One read: " This property for sale, about 13 acres; apply to E. Greenfield Sons & Company, or your own broker." Another sign, the existence of which at this time is in dispute, was that of a real estate agent named Hall. After receiving the direction from the hotelkeeper, Thanhouser returned to the property and had a conversation with plaintiff. According to plaintiff, she showed Thanhouser over the property and explained its desirability; Thanhouser said that he liked the property very much and asked the price and plaintiff told him $55,000. Thanhouser said he would not pay $55,000 and went away, but before leaving gave plaintiff two of his cards, saying, " Here is one for you and one for Mr. Chappell." One of the cards the plaintiff immediately sent to the defendant with a letter. The letter was not produced by the defendant, who claimed that it had been lost. There is a dispute as to the contents of the letter. Plaintiff testified that she said in the letter that she thought Thanhouser would buy the property and that defendant should let her know as soon as possible. Defendant testified that the substance of the letter was that the plaintiff inclosed the card of Thanhouser and said that he had been there and she had shown him the property and " that I had never given any price, but that she thought $45,000 might bring it." The defendant's reply under date of September 15, 1916, is in evidence and is as follows:

" I have been out of town as you surmised. The card of Mr. Thanhouser I have sent to Mr. Theo. S. Hall of No. 47 W. 34th St., N. Y. city, the broker who sold the other piece of the property. I thank you for your interest and trust that Mr. Hall will be successful in making the sale.

" Mrs. Greenfield is not particularly anxious to sell and seems to think that she should realize $55,000 for the ten

acres that are left. I have mentioned your name to Mr. Hall."

With reference to the price which plaintiff quoted to Thanhouser there is considerable confusion in plaintiff's testimony. At first she testified to quoting a price of $45,000 and then stated that this was at a second interview, when she had telephoned him " to come over to my place because the first time he said he would not pay $55,000 and Mr. Chappell wrote and said that they would not accept less than $55,000." Thanhouser said over the telephone, " What was the use of coming over," and plaintiff said, " I will try and see if I can't get the price down to suit you," whereupon he came over on the following Sunday and plaintiff told him that the property " was really worth more than $45,000." On cross-examination plaintiff testified that at the first interview with Thanhouser " He said he would not pay $55,000," but that the price at which the defendant had authorized a sale was $45,000. Plaintiff could give no intelligible explanation of why she told Thanhouser that she would try to get the defendant to reduce his figure from $55,000 when, according to her testimony, she had already been authorized by the defendant to sell at $45,000. Thanhouser, called by the defendant, testified that plaintiff did not quote any price when he first visited the property but that she subsequently wrote him that the property was held at $55,000 or $65,000 but did not recollect which. Without any reference to the testimony of the defendant, the testimony above quoted leaves it very doubtful, to say the least, that the plaintiff ever quoted a price of $45,000 to Thanhouser, but whether she did or not, that ended her activity in the matter, and the sale was subsequently effected after protrated negotiations by the regular broker of the Greenfield Estate, Hall. The purchaser maintained throughout the negotiations that he would not pay more than $45,000 and insisted upon paying a large part of this in the shares of a corporation in which he was interested. Hall finally induced the defendant to accept $30,000 in cash and $15,000 in Thanhouser Film Corporation stock and the sale was consummated by and the brokerage paid to Hall.

From the foregoing it appears that the sum total of plaintiff's

activities in the matter consisted of receiving at the premises, where she was employed by the defendant as caretaker, a visit from one who was led to make his inquiry without any act whatever on the part of the plaintiff; that she showed the visitor over the property and praised it highly; that she forwarded the visitor's card to defendant; that she telephoned Thanhouser and had him visit the property a second time; that possibly she quoted the price at which the sale was finally consummated, partly in cash and partly in stock; and that she wrote to Thanhouser stating that the price at which the property was held was $55,000, which was $10,000 more than he was willing to pay. The question is whether on such a state of facts it can be fairly said that the plaintiff produced the customer, Thanhouser, and sold the property to him. " It is established that before a broker can be entitled to his commissions he must produce a purchaser who is ready and willing to enter into a contract upon his employer's terms, and this implies and involves the agreement of buyer and seller and the meeting of their minds produced by the agency of the broker; that the broker must be the procuring cause of the sale. He must find a purchaser and the sale must proceed from his efforts acting as broker." (*Boyd* v. *Improved Property Holding Co.,* 135 App. Div. 623, 626, citing *Wylie* v. *Marine National Bank,* 61 N. Y. 415, and *Sibbald* v. *Bethlehem Iron Co.,* 83 id. 381.) Clearly the plaintiff did not negotiate or consummate the sale. The plaintiff, however, invokes the rule that " When a broker calls the attention of a prospective purchaser to property which he has been authorized to offer for sale, and communicates that fact and the name of such purchaser to the owner, the owner cannot defeat the broker's claims to commission by taking up and completing the negotiations himself, unless before so doing he in good faith terminates the contract of employment." (*Travis* v. *Bowron,* 138 App. Div. 554.) The issue, therefore, comes down to whether the facts above recited show that the plaintiff *produced* a purchaser, within the meaning of her contract, and as that term is ordinarily understood and applied in this class of cases. Producing a purchaser is not synonymous with merely introducing a purchaser. To produce a purchaser implies some effort or activity in discovering the purchaser. Before a

purchaser can be produced he must be found. Finding the purchaser in the first instance is certainly quite as important as communicating his name to the seller. The plaintiff did not seek out, find or discover this purchaser. He did not come to the plaintiff as a result of anything done by the plaintiff. Attracted by the property itself and seeking the name of the owner or some person through whom he could communicate with the owner, the purchaser was directed by a neighboring hotelkeeper to inquire of the caretaker on the premises, who proved to be the plaintiff, the employee of the defendant. In forwarding the card of the purchaser to her employer, plaintiff merely performed her obvious duty. She was not paid to do this, it may be said, but certainly she cannot be entitled to $2,750 for forwarding the inquirer's card, merely because the act was not strictly within her prescribed duties as caretaker. True, she praised the property and endeavored to persuade the purchaser to buy, telephoned to him and wrote to him, as above stated, but none of these activities produced any result, and, therefore, have no bearing upon the immediate point under consideration, namely, whether in order to show performance of a contract to produce a purchaser it is necessary to show that the alleged broker found the purchaser or that the purchaser came to the broker as a result of some effort or activity on the part of the broker. In the case of one who was regularly engaged in business as a real estate broker and who maintained an office, if an intending purchaser came to the broker because he knew that such was his business, or came to the broker's office to inquire about property and the broker furnished the name of the intending purchaser to the seller, it could readily be said that the broker had found the purchaser, because their meeting would have been the result, in part at least, of the broker's efforts and activities in his business as broker. The broker is advertised by his known activities, his office, his sign and the like, and when, by reason of these things, intending purchasers are led to seek him out, it is perfectly reasonable to say that the broker has found or discovered the purchaser. Manifestly, as it seems to me, an entirely different situation is presented when an intending purchaser, attracted only by the appear-

ance of a piece of property that he is passing, makes inquiry of a janitor or hallboy or caretaker, who happens to be on the premises, and leaves his card to be forwarded to the owner. Under the circumstances disclosed in the case at bar, the plaintiff completely failed to show performance of her contract to produce a purchaser for the property.

The judgment and order must, therefore, be reversed, with costs, and the complaint dismissed, with costs.

SCOTT and SMITH, JJ., concurred; CLARKE, P. J., and PAGE, J., dissented.

PAGE, J. (dissenting):

The jury has found upon evidence amply sustaining the finding that the defendant agreed to pay the plaintiff a commission of five per cent if she produced a purchaser or sold the property. The price that was given to her was $45,000. While it is true that Thanhouser's attention was attracted to the property by a sign indicating that it was for sale, she was the first person to show him over the property and give him the price of $45,000. She sent Thanhouser's card to the defendant. When informed that the estate desired to get $55,000 for the property, she wrote and telephoned to Thanhouser and induced him to bring his wife to look at the property, and showed them over the entire estate, pointing out its advantageous features. The defendant, however, in the meantime had sent Thanhouser's card to another broker who took up the negotiations and effected a sale at $45,000, the price that plaintiff had originally offered it.

The court charged the jury that one of the first things that they must determine was whether the defendant employed the plaintiff to sell this property, and promised to pay a commission if she produced a purchaser. The jury by their verdict have found that such an agreement was made. We then have a case where a person has employed another to sell real estate and promised to pay a fixed commission if a purchaser is produced. The person thus employed produced a purchaser; that is, the broker showed the prospective purchaser the property which he had been authorized to offer for sale, gave him the price at which it was sold and communicated the name of such purchaser to the owner. Under

such circumstances the owner cannot defeat the broker's claim for commission by taking up and completing the negotiations either himself or through another broker to whom the owner had given the name of the prospective purchaser, unless before doing so he in good faith terminates the contract of employment. (*Travis* v. *Bowron*, 138 App. Div. 554.) The cases relied upon by the majority are clearly distinguishable from the instant case. In *Boyd* v. *Improved Property Holding Co.* (135 App. Div. 623) the owner told a broker that if he would mention the name of a person who would lease the premises he would call upon him and pay the broker a commission in case the deal was closed. The owner subsequently leased the premises to the person with whom the broker had negotiated, but whose identity he had refused to disclose. Held, that the broker was not entitled to the commission as his negotiations had nothing to do with the lease and he had not given the name of his party to the owner. In *Wylie* v. *Marine National Bank* (61 N. Y. 415) the broker opened negotiations with a prospective purchaser and afterwards abandoned them. Subsequently the owner sold to the same person. In *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378) the owner had in good faith terminated the agency before himself undertaking the negotiation of the contract; but where, as in this case, the owner avails himself of the information given by the broker, and by his own active participation, or by transmitting the information, prevents the broker from consummating the sale, the owner cannot take advantage of his own wrong and deprive the broker of his commission, where the contract was subsequently closed at the price given to the broker by the owner. Nor can I assent to the proposition that the word " produce " a purchaser imposes all the burdens on the broker that the majority of the court hold. To produce a purchaser means to bring forward or introduce a purchaser who is ready, willing and able to contract on the owner's terms. Of course, unless the owner interferes without terminating the agency, the broker must show that his efforts were the procuring cause.

Therefore, as the sale was actually consummated upon the terms specified and with the purchaser who was first called to the attention of the owner by the plaintiff, she was

entitled to recover her commission. There was no error committed in the course of the trial in ruling upon evidence, and the case was submitted to the jury with a very fair and intelligent charge.

In my opinion the judgment should be affirmed.

CLARKE, P. J., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.