JAMES O. LLOYD et al., Respondents, *v.* EDWARD MATTHEWS, Appellant.

To entitle a real estate broker to compensation, it is sufficient that a sale is effected through his agency as its procuring cause; and if his communications with the purchaser are the means of bringing him and the owner together, and the sale results in consequence, the compensation is earned, although the broker does not negotiate and is not present at the sale.

It is not necessary that the purchaser be made known to the owner as the broker's customer, if he is so in fact. The owner is entitled to know that the broker has been instrumental in sending the purchaser; but when advised by the latter that he has received information of the purpose to sell and the price, it is the owner's duty to inquire whence the information was derived.

Where the owner has placed his property in the hands of two or more brokers to sell, notice to one of a change of purpose does not affect another, nor is the latter chargeable with notice because of acts of the owner in improving the property inconsistent with a design to sell, and his agency is not revoked thereby.

(Argued May 11, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Court of Common Pleas of New York, affirming a judgment in favor of the plaintiffs entered upon a verdict.

The action was brought by the plaintiffs for the recovery of commissions on a sale of certain real estate in the city of New York, made by the defendant, through their agency as brokers in his employment.

After the evidence was closed a motion to dismiss the complaint was made and denied, and a verdict was then rendered for the plaintiffs.

The facts, so far as they are material, are sufficiently stated in the opinion.

*Addison R. Brown* for the appellant.   To entitle a broker to commissions for effecting a sale, his agency must be the direct and immediate procuring cause thereof.   (*Higgins* v. *Moore*, 34 N. Y., 424; *Moses* v. *Bierling*, 31 id., 464; *Barnard* v. *Mound*, 3 Keyes, 204; *Glentworth* v. *Luther*, 21 Barb., 147; *Trundy* v. *Hartford, etc.*, 6 Robt., 313; *Lyon* v. *Mitchell*, 36 N. Y., 237.)   The evidence shows that plaintiffs had no agency or connection with the sale. (*Dreyer* v. *Rauch*, 3 Daly, 439.)   A revocation of the plaintiffs' agency may be implied from the circumstances.   (Story's Agency, § 474; Story's Bail., § 207, 208; Story's Cont., § 193; Smith's Mer. Law, 131, 132; *Tuttle* v. *Jackson*, 6 Wend., 213, 226; *Grinestone* v. *Carter*, 3 Paige, 421; *De Ruyter* v. *St. Peter, etc.*, 2 Barb. Ch., 555; 4 Kent, 179 [7th ed.]; *Baker* v. *Bliss*, 12 N. Y., 74; *Myer* v. *Hinman*, 3 Ker., 184, 188.)

*Luther R. Marsh* for the respondents.   Plaintiffs were entitled to commissions if the sale was effected through their agency as its procuring cause.   (*Knapp* v. *Wallace*, 41 N. Y., 477; *Redfield* v. *Legg*, 38 id., 212; *Moses* v. *Bierling*, 31 id., 462; *Lyon* v. *Mitchell*, 2 Trans. Ap., 47; *Barnard* v. *Monnott*, 3 Keyes, 203; *Doty* v. *Morris*, 43 Barb., 529; *Glentworth* v. *Luther*, 21 id., 145; *Ludlow* v. *Carman*, 2 Hilt., 107; *Corning* v. *Calvert*, id., 56; *Holly* v. *Gosling*,

3 E. D. Smith, 262 ; *Goldsmith* v. *Obermeier*, id., 121 ; *Chilton* v. *Butler*, 1 id., 150.)

LOTT, Ch. C.    There was sufficient evidence given on the trial to warrant the jury in finding that the plaintiffs were employed by the defendant to make a sale of the property in question.    William T. Lloyd, one of the plaintiffs, testified that the defendant, about the 10th day of March, 1861, called on them in relation to a piece of property which the plaintiffs were offering for sale, and after some conversation had passed in reference to it, he "stated that he had a piece of property which he would like to have" the plaintiffs "sell."    He then gave the location and price thereof, and on being asked whether the price named, $120,000, "was the lowest he would sell it at, he answered that "he thought it was worth about that amount, but was open to an offer," and after being told by the witness that he believed that he had a party that would like a piece of property of about that size, "he said that he would like to have" the witness "sell it for him."    This witness also stated that he made a memorandum of the fact of the premises being left for sale, in the presence of the defendant, who gave it to one of the young men in the office of the plaintiffs to enter on their book of property for sale.    That evidence is confirmed by the testimony of the defendant himself.    He, in answer to the question whether he "had employed the plaintiffs as brokers, for the sale of this property," said, "I never did employ them; I may have stated to them, early in March, that I would sell the property for $120,000, but I did not consider them authorized to sell the property even at that price on that day without consulting me and agreeing on all the terms beforehand."    He also, afterward, said that he told the plaintiffs what the size of the lot was and the price he asked.    He further testified that he was only once at the office of the plaintiffs, and he and the plaintiff Lloyd, whose testimony is above given, evidently referred to one and the same interview.    The defendant, it will be observed, does not *deny* the statement of Lloyd, but impliedly

admits it, and then construes it as not amounting to an *employment* of the plaintiffs to sell the property; what he himself does say is, however, sufficient to warrant the conclusion that he authorized them to find a purchaser and report to him for the purpose of consulting in reference to and agreeing on the terms of sale.

There was also testimony tending to show and sufficient to justify the jury in finding that the sale of the property was effected through the agency or instrumentality of the plaintiffs. Mr. Lloyd testified, in addition to his evidence above referred to, that he, a few days after his conversation with the defendant, sent the full particulars of the property, as given by the defendant, to James M. Austin, the grand secretary of the masonic fraternity and one of the trustees of the masonic hall and asylum fund of the masons of the State of New York, who was desirous of purchasing a site for the erection of a masonic hall, and that he afterward had two interviews with Mr. Austin in relation to its purchase, but that no sale was agreed on. The last of those interviews was in April. He also stated that he was himself a member of the fraternity, and that be had talked with a number of the members thereof advocating the purchase of that property. About a month after the interview in April, Mr. Austin passed the premises, and seeing that workmen were employed in taking down the building, he asked a Mr. Smith (apparently having charge of the work), who was the owner of the property, and, on being informed that the defendant was, he went to his place of business; and on his cross-examination by the defendant's counsel, he gives a statement of what then and there occurred between himself and the defendant in relation to the sale of the property in the following terms: "I asked him if it was still for sale, and he said it was; I asked him if he wanted to sell it for the price that had been named to me; he wanted to know what that price was; I said $120,000, and he said he would; I asked to have the refusal of it for two or three days until I could communicate with my associates." He added, that a contract of sale was within five days thereafter entered into

between the defendant and the fraternity for the sale of the premises to them, Mr. Austin and Robert D. Holmes acting on their behalf. Mr. Austin had previously testified, on his direct examination, that the first knowledge he had of the fact that the property was in the market for sale, was derived from a communication sent to him by Mr. Lloyd, and that he went " to look at it with a view to purchasing it in consequence of its being brought to" his "information by Mr. Lloyd." He also stated, on his cross-examination, that he made up his mind six weeks before its purchase to buy it if he could, and that when he saw the men at work on the building, and as he supposed tearing it down, he " felt very anxious," and after ascertaining, on inquiry from Mr. Smith, that the defendant was the owner, he went down to see him, and that the negotiation between them above detailed then took place. Testimony was given by both parties tending to show what compensation was proper in case of a recovery.

The defendant proved that he placed the property in the hands of Homer Morgan and E. H. Ludlow & Co., for sale, or at least to receive offers therefor, and that he, in the latter part of April preceding the sale, notified them that it was withdrawn from sale and that he intended to build. He also testified that he, up to the time of the execution of the contract of sale, had no knowledge, information or notice whatever, directly or indirectly, from the plaintiffs or any of them, or otherwise, that they had anything to do with the sale or with Mr. Austin in reference to the property. He, however, in speaking of what took place between himself and Mr. Austin in reference to the negotiation for the sale of the property and other matters, made the following statement: "After a good deal of conversation, he asked me, if I remember correctly, if I had not offered it for $120,000; I told him I had some time before, but not recently; that I had withdrawn it from sale since April." There was no evidence that it had been offered for that price by either Morgan or E. H. Ludlow & Co., and the above statement tended to show that Austin had previously had communication with some other party

from whom he had received information, not only that the premises were for sale, but also that the defendant, before making the sale, had notice of that fact.

He himself subsequently, after saying that he had never employed the plaintiffs, made the further statement, to which I have already referred in considering the question of the plaintiffs' employment, that he may have stated to them, early in March, that he would sell the property for $120,000; but that he did not consider them authorized to sell it at that price without consulting him, and agreeing on all the terms beforehand. Some other proof, bearing on the question of the plaintiffs' employment and their agency in causing or procuring the sale to be made, was also given; but I do not deem it necessary to set it forth specially. The evidence which has been set forth and referred to was sufficient to call for and require the submission to the jury of the questions of the plaintiffs' employment by the defendant, and his liability for the services rendered by him, under proper instructions as to the rule and principles of law applicable to the case. The motion to dismiss the complaint on the ground stated in the case, that the plaintiffs were not entitled to recover upon the evidence, was, therefore, properly denied. No other ground for the motion is mentioned.

After its denial the defendant's counsel "requested the court to charge the following propositions to the jury:"

1st. That if the conversation detailed by the plaintiff himself occurred just as he has stated it, between him and Mr. Matthews, still, that on this evidence as it now stands, plaintiffs are not entitled to recover.

2d. That if Mr. Matthews, though he may have employed Mr. Lloyd at first to sell the property, subsequently withdrew the property from the market, changing his purpose, and making that change manifest, and giving the brokers, Mr. Morgan and Mr. Ludlow, notice of that change of purpose, the only ones whom he supposed were authorized to sell the property, that then the plaintiff is not entitled to a verdict.

3d. That if Mr. Austin employed Mr. Lloyd to seek for a

piece of property for this company for whom he acted, and Mr. Lloyd obtained this property in question for Mr. Austin, that then Mr. Lloyd is not entitled to recover broker's fees from Mr. Matthews.

4th. That a broker is not entitled to a commission in this case merely for giving information to the person who subsequently buys, and for recommending the purchase, unless the broker goes further and either directly negotiates the sale or directly brings together the buyer and seller, who thereupon complete the bargain.

5th. That a broker's duties are not performed so as to entitle him to commission unless he brings the buyer and seller into communication with each other, and the sale results therefrom.

6th. That the seller is entitled to know that the party with whom he is dealing is a customer of the broker, if such be the fact.

7th. That the interview between Austin and Matthews, which resulted in a sale, and the negotiations of the parties with each other, were not effected through the direct agency of the plaintiffs, according to the undisputed evidence in the case.

The court refused so to charge, and proper exceptions were taken to the refusal.

None of those exceptions were well founded. The first proposition presented substantially the same ground on which the motion for the dismissal of the complaint was based; and what has been said in reference to that question is applicable to the said proposition.

The second request was improper for several reasons:

First. It assumed as facts that the defendant had changed his purpose, and also that he had made that change manifest. Those propositions were at least questionable under the evidence. Assuming that the defendant had given Mr. Morgan and E. H. Ludlow & Co. notice, as he testified, of the withdrawal of the property from sale, and conceding that he had commenced tearing down the building, yet his conversation

with Mr. Austin, followed by the sale actually made, tended to "manifest" and prove that his purpose or intention of making a sale, if he could, had not been abandoned.

Second. If there was such change of purpose, the notice of it given to Morgan and E. H. Ludlow & Co. did not affect the plaintiffs. It was not shown that they were notified or had any knowledge of it, or of the fact that the defendant had commenced to take down the building; and it is not, as is claimed by the defendant's counsel, a case in which "the law implies notice, and they are presumed to have had it."

Third. Nothing contained in the request can be considered as revoking the plaintiffs' employment.

The court declined to charge the third proposition, on the special ground that it rested upon hypothesis, and because there was no evidence to sustain it. That ground was correct. It is true that Mr. Austin, in answer to a question by the defendant's counsel, whether he did "employ Mr. Lloyd or talk with him about getting any property" for him, said that he did; but it is evident from what he subsequently said that he did not intend to be understood as answering the first branch of the question affirmatively, and that his answer related to the latter part of it only. He was asked immediately thereafter how long ago it was that he first spoke to Mr. Lloyd, and he replied that he thought it was within a week previous to the time of the receipt of the communication from him that the premises were for sale; and on being asked to state what he said to him, he said "I talked to him about buying property; I asked him if he knew of any property suitable for our purpose;" and being further asked whether he said he "wanted to buy," he replied "Yes." He further said, in answer to other questions that he, subsequent to the above conversation, received a diagram of the property, and also that Mr. Lloyd was a member of the masonic fraternity; that he was occasionally in his (Austin's) office, and that he (Austin) "spoke to him about it." The above statements were elicited by inquiries made by the defendant's counsel.

The plaintiffs' counsel then put the following question to him : " That is what the counsel calls employment. Counsel speaks about your having employed him to get the property. Now, was this an employment, or was it a casual conversation ?" He answered, "It was a casual conversation that just occurred ; and I asked him if he knew of any property, if he had on his books any real estate, or if he knew of any real estate."

He was then asked this question: " That was when Mr. Lloyd came to know that you wanted property of this kind ?" He replied " Yes." It is also true, as claimed by the defendant's counsel in his points, that when the defendant first called on the plaintiffs, as above stated, that they were making up a list of property they had for sale, to send to the trustees of the Masonic Hall Asylum fund, and that such list was subsequently sent. This, instead of proving an employment by the trustees, or by Austin, to *purchase* property for them, shows that the plaintiffs were endeavoring to effect a *sale* to them for and on behalf of other parties by whom they had been employed to make a sale. There is no other evidence which can give color to the facts stated in the third proposition ; and the court, for the reason stated by him, properly refused to charge it.

The court also properly refused to charge the jury in the terms of the fourth proposition.

The latter portion of it is erroneous. It is sufficient to entitle a broker to compensation that the sale is effected through his agency as its procuring cause ; and if his communications with the purchaser were the cause or means of bringing him and the owner together, and the sale resulted in consequence thereof, the broker is entitled to recover ; and the court so charged, in substance, in the charge subsequently given to the jury.

The fifth proposition is substantially the same as the last part of the fourth proposition ; and what is said in relation to that applies to this.

The sixth proposition is not correct. It is to be under-

stood, in the connection in which it is presented, as declaring that, although a party is brought, through the agency and instrumentality of the broker, into a negotiation and dealing with the owner, which actually results in a sale, yet the broker is not entitled to compensation, unless it is made known to the owner that the purchaser is his customer. That is not true. It is sufficient that the purchaser is in fact such customer.

The refusal to charge the seventh proposition was also proper, for the reason stated in reference to the fourth request, and for the additional reason that the court was asked to instruct the jury specifically as to the result and effect of the testimony on a material question of fact.

The court, after these several propositions were submitted, charged thereon, and generally on the whole case; but no questions, except those presented by the refusals to instruct the jury, as above requested and already considered, were raised by the charge than those hereinafter referred to, which will now be examined.

It was stated by the court, in connection with other matters, that it was not the fault of the plaintiffs that Mr. Austin, after ascertaining the name of the owner of the property, went directly to him instead of going to the plaintiffs to conclude the negotiation for the purchase thereof. This statement was excepted to. It was a portion of the charge that if a broker first brings notice of property placed in his hands for sale to a party, and he, after being informed of the terms of sale, deals with the owner and purchases the property, then the broker is entitled to his commissions although he be not present at the time the contract of sale is executed; that it was enough that, through his instrumentality, the contract of sale was made. Its only effect in the connection in which it was made (and it could not fairly be understood differently) was to show that the plaintiffs' right to compensation was not, under the circumstances stated, affected or impaired by the fact that the purchaser went to the defendant to make the purchase. There was no error in this. The court,

also, in relation to the proposition or request of the defendant to charge "that the seller is entitled to know that the party with whom he is dealing is the customer of the broker, if such be the fact," said that a seller is entitled to know the name of the broker, or that the broker has been instrumental in sending the purchaser, as a matter of protection to himself. This was followed by a statement that the defendant had notice in his first interview with Mr. Austin, which should have put him upon his inquiry as a cautious man, and that he was bound to make the inquiry. This statement was excepted to. Reference was immediately thereafter made to the evidence given by Mr. Austin, that he, in this interview, asked the defendant if the property was still for sale for the sum of $120,000, the price that had been named to him, and that he said he would sell it for that sum. He then added, "that it don't appear that there was any question asked as to where Mr. Austin derived that information. He put no question of that kind to him. Had he done so, he probably would have instantly declared that the Messrs. Lloyd were the persons from whom that information was received, and who had communicated to him all the details necessary to carry out the purchase."

It is evident, from the connection in which the remark excepted to was made, that it was not an instruction, that it was obligatory on the defendant as a *legal* duty or requirement that he should have inquired of Mr. Austin whether the notice or information that the premises had been offered for sale was derived from a broker, or whether he came to make the purchase through his instrumentality; but it was only a declaration that it was, in view of the fact that he had placed it in the hands of brokers for sale, and had received such notice or information, proper in the exercise of a due and proper precaution, and as a protection against a claim for commission from either of such brokers to make such inquiry.

There was nothing in this which was exceptionable.

Some exceptions taken to the exclusion of evidence offered by the defendant remain to be considered. This relates to

offers to prove what was said by the defendant, Mr. Austin, and Robert Holmes in relation to the sale of the property at the interviews they had on the subject, and conversations between Jerry T. Smith and Austin and Holmes at the building in reference to tearing it down and the ownership of the property. No evidence had been given by the plaintiffs relating to the interviews first referred to; and neither of them was present when the conversations took place, and no foundation was laid to contradict any statement that had been previously made by either of those witnesses, and they were excluded on those grounds, and properly. There is no color for the claim by the defendant's counsel that the evidence was "competent as a part of the *res gesta* of the contract of sale." There was no question raised as to the making of the contract or its terms that made the proof proper. There was also some testimony offered to prove acts done and expenses incurred by the defendant after the time of the alleged employment of the plaintiffs, and before the sale, upon and in reference to the property, for the purpose of showing that he had made a change of his plans. It was not claimed that the plaintiffs, or either of them, had notice of those acts or expenses. The proof was therefore properly excluded. I will add, in conclusion, that on a full and careful consideration of all the exceptions presented in the case, I do not find that there has been any error calling for the reversal of the judgment.

It must therefore be affirmed, with costs.

All concur.

Judgment affirmed.