Judgment reversed, new trial ordered before another referee to be appointed by the order to be entered hereon, with costs to appellant to abide event.

---

John L. Douglass, Appellant, *v.* John F. Halsted, as Receiver of The Firemen's Insurance Company, Respondent.

*Real estate broker — commissions, when earned — whether there was an employment is a question of fact.*

In order to entitle a real estate broker to recover commissions upon the sale of real estate, it is necessary for him to find and to produce to his principal a purchaser ready and willing to purchase the real estate upon the terms of the owner.

In an action brought to recover commissions, alleged to be due to a broker upon the sale of real estate, it is for the jury to determine, when the evidence is conflicting, whether or not there was an employment of the broker for the purpose of the sale of the real estate in question.

Appeal by the plaintiff, John L. Douglass, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 18th day of October, 1893, upon the report of a referee, and also from an order made at

the New York Special Term and entered in said clerk's office on the 13th day of October, 1893, confirming the referee's report.

*Thomas F. Wentworth*, for the appellant.

*Frank D. Sturges*, for the respondent.

PARKER, J.:

The referee's report, in pursuance of which the judgment now before this court was rendered, asserts among its findings of fact that the plaintiff Douglass was not the producing cause of the sale of certain premises, known as 153 Broadway, by the defendant to the Singer Manufacturing Company. And, further, that the plaintiff Douglass was never employed by the defendant to sell the property.

It was for the usual commissions of a real estate broker for such sale that the claim was made upon the receiver of the Firemen's Insurance Company, the denial of which eventuated in this proceeding.

If these propositions of fact are well grounded, it follows that the judgment dismissing the complaint was proper.

The appellant, however, insists that they are erroneous, because, *first*, "against the weight of evidence;" and, *second*, "*contrary to the law of* the admitted facts."

We should have some difficulty in understanding what is meant by the second proposition, but for the argument elsewhere in the appellant's brief, intended to make it appear that this case is fairly within rule of *Lloyd* v. *Matthews* (51 N. Y. 124).

It is asserted that the material facts correspond with those in *Lloyd's* case, or at least that the defendant's testimony touching the matter of the employment of the broker was in each case the same in substance. After quoting from the opinion of the court reciting the testimony of the defendant in *Lloyd's* case, the appellant continues : "This statement the court held was sufficient to warrant the conclusion that he authorized them to find a purchaser, and report to him for the purpose of consulting in reference to and agreeing on the terms of sale."

As the position of the court is stated in the brief, it would seem that it had asserted that the facts referred to required the legal conclusion that the defendant had employed the broker to find a purchaser. We do not so understand the opinion. The clause quoted

was but the ending of a discussion by the court intended to make it clear that the evidence in the case was such that there was presented a question of fact for the jury, whether the plaintiffs were employed by the defendant to make a sale of the property for which they claimed commissions. Starting out with this proposition the court followed it with a consideration of the testimony presented by both plaintiffs and defendant, and, therefore, when it concluded with the statement that certain evidence was sufficient to warrant the conclusion that defendant authorized plaintiffs to find a purchaser, it referred to the conclusion of fact which the jury had drawn from the evidence. For the trial court had submitted that question to them, and this part of the discussion was only for the purpose of making it clear that the court did not err in so doing.

In this case the question of fact as to whether there was an employment has been passed upon. It was the duty of the jury in *Lloyd's* case, said the court, to pass upon it.

It was likewise the duty of the referee in this case. And after a careful reading of the testimony we have come to the conclusion that the findings are sufficiently well sustained by the evidence to entitle them under the rules which obtain in such cases to stand unreversed by this court.

Upon the question of employment there can be no doubt but that the plaintiff made out a *prima facie* case.

But Mr. Halsted, then the president of the defendant, now its receiver, gave an entirely different version of the two conversations had with plaintiff which it was claimed resulted in a contract of employment. His testimony was as follows:

" At that interview Mr. Douglass came in the office, came up to me, and said, ' Mr. Halsted, is this property for sale?' I said, ' No, sir.' He said, ' It can be bought, can't it?' ' Well,' I said, ' possibly.' He said, ' Well, if it was sold, how much would you ask for it?' I said, ' Not less than $200,000.' He said, ' You would as leave I sell it for you as anybody?' I said, ' Mr. Douglass, the property is not offered for sale, and will not be put in anybody's hands for sale.' He said, ' I will come in and see you again.' I answered, ' Don't come in unless you have a definite proposition to make.' That closed the interview.

" The next one was in the latter part of October or about the first

of November. I could not fix the date exactly; it was the same year, 1889. It took place on a Wall street ferryboat. I was going to New York from Brooklyn. He was going to Brooklyn. We met about the chains of the boat. I was coming to New York and Mr. Douglass was going to Brooklyn. He said, 'Mr. Halsted, I am coming to see you about that property.' I said, 'Don't come unless you have a definite proposition to make, because I am very busy.' He replied, 'If you are more busy than I you are a busy man.' I replied, 'I am.' He went over to Brooklyn; it was in the room of the ferry. I did not have any other interviews with Mr. Douglass on the subject. He did not bring a definite proposition to me for the purchase of the property. He never told me that he had a purchaser for the property. He never told me the name of the purchaser he had in view. Q. I understand you to say these two comprised all the interviews you had with him on the subject prior to the sale of the property? A. They did in relation to this property."

This testimony, if believed by the referee, as it appears to have been, was sufficient to support his finding on the subject of employment. The other finding that Douglass was not the procuring cause of the sale of defendant's property to the Singer Manufacturing Company is also adequately supported by the evidence.

That the plaintiff conceived the idea of combining and selling to one party No. 153, owned by the defendant, and Nos. 151 and 149, owned by other parties, is not questioned. But the president of the Singer Manufacturing Company, with whom all negotiations were conducted, utterly refused to entertain the proposition to buy either one of the properties unless he could buy all three. The plaintiff made considerable effort to accomplish that result. He found that he could buy two of the properties at figures which were acceptable to the president of the Singer Manufacturing Company, provided the third property could be purchased on a proportionate basis.

The third property he could not buy. There were so many undivided interests in it that it was not practicable to secure a contract of sale for it. It seemed to have been so situated that the only way to accomplish a sale was the one ultimately adopted by one of the interested parties, who commenced a partition suit, which finally resulted in a sale of the property.

Now, it is apparent that during all this time the plaintiff did not bring to the defendant a purchaser. He could not do so because he had none. He had a party who might in a certain contingency become willing to purchase the property. Who this party was he did not inform the defendant, or its president. In the meantime the president of the Singer Manufacturing Company, in a conversation with a friend, informed him of his attempt to purchase all three properties, and the failure, owing to the inability of the real estate broker (this plaintiff) to find parties who could give a good title to one of the properties, and the friend replied that he knew a person who had the estate in charge, and probably could bring it about for him. And thus was started another attempt to acquire the three properties for the Singer Manufacturing Company, which in the end was successful. So, while the idea originated with the plaintiff, and considerable work was done by him, he was compelled by force of circumstances to stop before reaching the point at which he aimed, while another who originated nothing, but simply stumbled upon the plan, was enabled by a little labor to carry it into execution, and receive all the commissions.

While it is unfortunate for the plaintiff that he should have been " so near, and yet so far " from the accomplishment of his purpose, the fact remains that the evidence justified the determination of the referee, that the plaintiff did not at any time find a purchaser and produce him to his principal, ready and willing to purchase the real estate upon its terms.

And thus much it was necessary for him to do in order to recover. (*Gerding* v. *Haskins*, 141 N. Y. 514.)

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment affirmed, with costs.