Burr, J.:
We think that the question whether plaintiffs’ efforts were the procuring cause of the sale by defendants of the property described in- the complaint was one of fact for the jury, and not of law for the court. Plaintiffs are a firm of real estate brokers. There was evidence from which the jury might have found that in January, 1907, the attention of one Bussell Hopkins was called to an advertisement by them' to the effect that they had for sale water-front properties located on the Hudson river. In response to his request, one of the firm called on Hopkins at 1080 Fifth avenue, in the borough of Manhattan, and told him of three or four pieces of property which they had been employed to sell, including the Banker property. This was water-front property situated ‘ near Irvington. Thereafter plaintiffs procured from one of the defendants a written description of the same, and also a map showing its location. The latter was delivered to Hopkins and the contents of the former communicated to him. In the early part of February, Hopkins, with his wife, met one of the plaintiffs by appointment on the premises and were shown over the property, including the two houses and the carriage house upon the same. At that time the ground was covered with snow. Hopkins expressed himself as pleased with the property and said that he would return home and talk with his wife’s grandfather about it and that “ if he liked the property w<fith the snow off as. well as with it on, he was a likely buyer of the property.” Mrs. Hopkins added that the property was to be for their residence, but that her grandfather was to pay for it. Shortly thereafter, at Hopkins’ request, defendants were asked by plaintiffs if they would consider an offer of $200,000 for the property, and stated through their attorney that they considered this offer too small. After the ground was clear from snow plaintiffs made several unsuccessful efforts to induce Hopkins to visit the property again, but their contract of' employment was never terminated. In April, 1907, defendants entered into a contract with Joseph. J. Lawrence for the sale of the property in question for $195,000, which contract was consummated by the delivery of the deed thereof in June. Lawrence was the grandfather of Mrs. Hopkins, and 1080 Fifth avenue was his residence. On September ninth of the same year Lawrence made a deed thereof to *556 Russell Hopkins. If tlie sale had been directly to Hopkins, inasmuch as plaintiffs were the means of bringing the property to his attention and of bringing him .and the owners of the property into communication, in consequence of which a sale’ resulted, the f-act that plaintiffs were not present when the final negotiations were completed would not deprive them of their right to commissions. .(Lloyd, v. Matthews, 51 N. Y. 124.) When a broker calls the attention of a prospective purchaser to property which he has been authorized to offer for sale, and communicates that fact and the name of such purchaser to the owner, the owner cannot defeat the broker’s claims to commission by taking up and completing the negotiations himself, unless before so doing he in good faith terminates the contract of employment. • If the deed to Lawrence and the ■ subsequent deed from him to Hopkins were only intended to cloak and hide the real transaction, the result would be the. same as if the sale had been made to Hopkins directly. But if Hopkins as the agent of Lawrence. obtained from plaintiffs knowledge as. to this property, through their efforts was induced to examine the same, expressed himself as satisfied therewith, and communicated such information, and approval to Lawrence, who thereafter purchased the same without other information upon the subject, and while the brokers’ contract of employment was unrevoked, the owner would be liable to pay the brokers for their Services. It was possible for thé jury to find that such was the case. It is true that there is no direct evidence that Hopkins did communicate to his wife’s grandfather the knowledge which he had acquired from plaintiffs with regard to this property. The circumstances point strongly in that' direction. According to plaintiffs’ evidence he had declared his intention óf doing so, and at that time resided in the same house' with Lawrence. Lawrence never saw the property himself. It does not appear that he obtained information respecting the same from any other source. Before making the contract he asked á friend of his named Gus L. Lawrence to go up the Hudson and buy a place for him. He said that his grandson-in-law had looked at several places, and when Gus L. Lawrence returned he advised him to buy the Banker place. How Gus L. Lawrence came to examine this place unless Hopkins had told Joseph J. Lawrence about it, and he had told his friend Gus L. Lawrence, does not appear. It *557 is true that Joseph J. Lawrence says that he did not know whether Hopkins had seen the Banker property or not, but he thought that he had. He says that he does not remember having any conversation.with Hopkins about the property, and does not recollect that either Hopkins or his wife spoke to him- about it in February or March, 1907. He also says that he does not remember whether in February of that year Hopkins and his wife were living with him at his house at 1080 Fifth avenue, although it is clear that.they were. He does not deny that they did talk with him about it, and it is difficult to see from what other source he obtained the information which induced him to make the purchase. It does not appear that Gus L. Lawrence gave him any information about the location of the place, its dimensions or the buildings upon it. He only adviséd him to buy this in preference to any other. That the circumstances unexplained justified the conclusion either that Lawrence was only a cover for Hopkins or Hopkins was his agent in the transaction appears from the fact that in March, 1907, and before the contract was signed, one of the defendants told plaintiffs that they had some negotiations with some one and that he believed it was their man Hopkins and “ to get busy.” It was then that they renewed their efforts to get into communication with Hopkins and did not succeed. Again, on the day that the contract was signed, one of the defendants-said to the attorney who had prepared the papers “ that number at the corner of 89th street and Fifth avenue was the same property on which Hopkins had given his residence ; dó you suppose that this purchase was for Hopkins ? ” Hopkins was not called as a witness to testify what if any conversation he had with his wife’s grandfather on the subject, and Gus L. Lawrence was not called to testify how, after his interview with Joseph J. Lawrence, he came to look at the Banker property. When the circumstantial evidence on the one side is so strong and the denial on the other is so weak, vague and indefinite, the most that can be claimed by the defendants is that a question of fact arose for the jury. The learned- court below in directing judgment for the defendants relied upon the cases of Freedman v. Havemeyer (37 App. Div. 518) and Cole v. Kosch (116 id. 715). Neither of these cases seems to us to be controlling. In the former, plaintiffs were not employed by defendant generally to effect a sale of the prop *558 erty. Having heard that it was' in the market for sale, of their own volition they sought the defendant and submitted to him an offer of $275,000 for the property, which he refused. More than a year afterwards he accepted an offer of the same amount for the same property, submitted through another broker. It subsequently appeared that the purchaser was the. same person who had previously made an offer through the plaintiffs. ■ There was no evidence that plaintiffs had anything whatever to do with securing the second offer from the purchaser, and as their employment was a special one,, to wit, to sell only at a particular price, not less, than $285,000, and they had never procured a purchaser willing to purchase at that price, and there was no suggestion of ,bad faith on the part of the seller, plaintiffs were held not entitled to recover. In the Cole case defendant had placed the property in the hands of several brokers for sale. Plaintiffs submitted an offer in behalf of one Humphreys of $12,500, which was refused, and thereupon they ceased their efforts. Subsequently another broker submitted an offer of $12,750 in behalf of a Mrs. 'Cliampney, which was accepted. It thereafter appeared that Mrs. Cliampney was the.mother-in-law of Humphreys, and that the purchase was in his interest, although defendant had no knowledge that such was the case when" the contract was made. The court there properly held that, although plaintiffs first called ■Humphreys’ attention to the property, when they abandoned their efforts to sell to him and another broker succeeded in inducing him to purchase at a price greater than that which plaintiffs had submitted for the property, their efforts could not be said to be the procuring cause of the sale in question.
Much of the testimony above referred to was contradicted by the defendants, and it may be that if the question of the procuring cause of the sale, had been submitted to the jury they would have found a verdict in their favor. All that we intend now to decide is that the question should have beeñ submitted to them.
The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.
Hirsghberg, P, J., Thomas and Bich, JJ., concurred; Carr, J., dissented.
Judgment and order reversed and' new trial granted, costs to abide the event,