FREDENBURGH-METZGER REALTY CO., INC., Respondent, *v.* HYMAN LEVENTHAL, Appellant.

Third Department, January 7, 1925.

**Brokers — action of interpleader by real estate broker to determine ownership of commissions claimed by another broker — evidence justified jury in finding that plaintiff is entitled to commissions.**

In an action of interpleader by a real estate broker to determine the ownership of commissions for the sale of real property which were claimed by another broker, the evidence justified the jury in finding that the owner employed the plaintiff to sell the property and gave it the exclusive right; that the plaintiff first brought the matter to the attention of the purchasers and was the means of bringing the owner and purchasers together; and that the plaintiff was the procuring cause of the sale which was made according to the terms and for the price given it by the owner.

Under the circumstances, the plaintiff's right to commissions was not defeated because the negotiations were completed through another broker.

APPEAL by the defendant, Hyman Leventhal, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 17th day of December, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 16th day of January, 1924, denying the defendant's motion for a new trial made upon the minutes.

In June, 1922, Elizabeth Cronk sold her Kingston hotel property to Vigden and Banks for $40,000. The sale was made through the agency of either the plaintiff or the defendant in this action, each of whom brought an action against her to collect the commissions, $1,000. She paid the money into court, the two actions against her were discontinued and this action in the nature of an interpleader was ordered. The one question presented to the jury, as agreed to by counsel, was, " Did the Fredenburgh-Metzger Realty Co., Inc., or Hyman Leventhal procure Louis Vigden and Abraham Banks as purchasers of the Kingston Hotel Property? Answer, which? " The jury answered in favor of plaintiff. The motion to set aside the verdict was denied; the trial court approved the finding of the jury. The verdict decides the disputed questions of fact in favor of plaintiff. The question presented on this appeal

is whether or not the verdict should be set aside as against the weight of evidence.

During the latter part of May or early in June, 1922, at the request of Mrs. Cronk, Mr. Fredenburgh, an officer of plaintiff, called upon her and she told him that she desired plaintiff to sell her hotel property; she named $45,000 as the " asking price," but she would accept $40,000; the amount of the commissions, two and one-half per cent, was agreed upon. They discussed what advertising was to be done and she advised him as to material therefor. Mrs. Cronk told him that L. B. Van Wagenen Company, represented by Mr. Rudderham, had an option, or first privilege, to purchase the property. At this point the first dispute arises. The appellant claims there was no employment of the plaintiff; that Mrs. Cronk directed Fredenburgh not to begin advertising until she heard from Rudderham. He says she directed him to delay advertising until Rudderham had decided whether or not he would take it. There is no serious merit in this difference of expression. She desired to sell the property and did not intend an indefinite postponement of effort to that end. Her plain intent was to employ the plaintiff to sell the property, unless the Van Wagenen Company decided to buy it. She desired to be protected against a claim for commissions by plaintiff if the Van Wagenen Company bought the property. Mr. Fredenburgh saw Rudderham, who refused to consider the proposition at a price higher than $30,000. This was a refusal of the option and Fredenburgh complied with Mrs. Cronk's direction. The jury was justified in finding that Mrs. Cronk employed the plaintiff to sell the property and at this time the property was in the hands of no other broker or agent for sale. Plaintiff was then, and had been for a long time. established in the city as a real estate broker.

From this point there is a serious conflict in the evidence. Mr. Metzger, representing the plaintiff company, testifies that Mr. Fredenburgh told him that they had the sale of the Kingston hotel; at that time he was negotiating with Vigden and Banks, who contemplated the purchase of a business place in the city; while offering them the United States Hotel in Kingston and some time between the first and the fifth of June, he proposed to them the sale of the Kingston hotel; he stated to them the price and recommended the purchase; during the conversation Leventhal came in and Metzger remarked to Leventhal: " You know that the Kingston hotel is one of the best properties in the city; they can buy that; Mrs. Cronk has given it to us for sale; " Leventhal said nothing and walked out; immediately after this conversation Metzger called on Mrs. Cronk to report to her his conversation

with Vigden and Banks; as he went in Leventhal came out; he told Mrs. Cronk that he was trying to make a sale of the property to these men and Mrs. Cronk said that Leventhal had been in and said he had a buyer; Metzger replied: " Those are the two buyers; don't get confused with them; those are the people I was talking with; that is what I came over for; I wanted to get to you first, but he beat me to it; " Mrs. Cronk said she had told Leventhal that she would not deal except through the Fredenburgh company. Mr. Fredenburgh testifies that, about the fourteenth of June, he went to Mrs. Cronk's room and met Mr. Leventhal coming out; Mrs. Cronk told him of the interview she had just had with Leventhal, during which he had made an offer for his men (Vigden and Banks) of $38,000 for the property; he told Mrs. Cronk these men were plaintiff's clients, and that plaintiff had presented the proposition to them; she said: " She had asked Mr. Leventhal how he knew that the property was for sale and that he had replied to her that he had heard on the street that she had been made an offer for the property; " he said: " Mrs. Cronk, it was agreed perfectly and was thoroughly understood that we were to have the sole handling of this proposition; " she said: " That is absolutely so and just as I want it to be; * * * if Mr. Leventhal comes back here himself or with these people I will certainly tell him he must go to you, that if any deal is made, it has got to be made through you." The testimony given by Metzger and part of the testimony given by Fredenburgh is directly in conflict in many respects with the testimony of Mrs. Cronk, her sister, Leventhal and Vigden and Banks. Neither Fredenburgh nor Metzger showed the property to the purchasers. Leventhal did show the property to them; he brought them to Mrs. Cronk and the papers were drawn in the office of her attorney on the fourteenth or fifteenth of June, closing the contract. No representative of the plaintiff was present during this transaction.

*Van Etten & Cook* [*Andrew J. Cook* of counsel], for the appellant.

*Frank W. Brooks,* for the respondent.

VAN KIRK, J.:

The charge of the court was fair and clear and no exceptions thereto were taken by appellant. The court and jury saw and heard the witnesses; they had every opportunity and means on which to determine the credibility of each. There was evidence justifying findings as follows: That Mrs. Cronk employed the plaintiff and gave it the exclusive right to sell this property; that plaintiff first brought the matter to the attention of the purchasers and was the means of bringing the seller and purchasers together;

that the plaintiff was the procuring cause of the sale; that plaintiff named the purchasers to Mrs. Cronk after it was given the exclusive right to sell the hotel and before the sale to those purchasers was made; that Mrs. Cronk received the price and the terms at and under which she authorized plaintiff to sell it; that the defendant first learned that the property was for sale and that these purchasers might buy the property from Mr. Metzger and was informed at that time that the property was in the hands of plaintiff for sale; that the defendant took advantage of this information and was able to close the deal; that he induced the purchasers to deal through him by dividing his commissions.

The rule governing here is well stated in the headnote in *Lloyd* v. *Matthews* (51 N. Y. 124): "To entitle a real estate broker to compensation, it is sufficient that a sale is effected through his agency as its procuring cause; and if his communications with the purchaser are the means of bringing him and the owner together, and the sale results in consequence, the compensation is earned, although the broker does not negotiate and is not present at the sale." In *Travis* v. *Bowron* (138 App. Div. 554, 556) it is said: "When a broker calls the attention of a prospective purchaser to property which he has been authorized to offer for sale, and communicates that fact and the name of such purchaser to the owner, the owner cannot defeat the broker's claims to commission by taking up and completing the negotiations himself, unless before so doing he in good faith terminates the contract of employment." The contract of employment with this plaintiff was at no time terminated by the vendor. Under the circumstances here plaintiff's right to commissions was not defeated because the negotiations were completed through another broker. (*Winslow* v. *Day*, 192 App. Div. 834, 836.)

The judgment should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.