Arthur Wachtel, J.
This is an action for broker’s commissions. Victor Zuckerman is a licensed real estate broker. Murray Neale, a real estate salesman in his employ, testified that in the early part of March, 1958 he received a listing from Mrs. Enid Martin, who, with her husband, Ernest B. Martin, owned premises located at 748 Noble Avenue, The Bronx, and that he received the details concerning the apartments, the heating system, the plumbing, the equipment, the refrigerators, stoves, sinks. The property was listed at $21,500, possession in two months. He arranged an appointment with Mrs. Martin to bring a prospective purchaser, and introduced Mrs. Inez Douglas to her. They were shown the ground floor and basement and the heating plant; and discussed the construction of the house and when the sale could be consummated. Mrs. Martin advised them the sale could be consummated in about two months. Thereafter, Neale telephoned and spoke to Mr. Douglas, told him he had shown the Martin house to his wife, and arranged another appointment. On March 20 he took Mrs. Douglas again to the property and she told him that her husband had confidence in the type of property she was looking at. She stated she would be willing to consider $18,500. Between March 20 and March 27 Neale communicated with Mrs. Martin, told her of the offer, and Mrs. Martin said that she would like to get her price but would leave everything open. “We could have arranged a meeting of the price.” He continued negotiations with Mrs. Douglas and Mrs. Martin until April, when upon calling Mrs. Martin he was advised by her that she *636 decided to take the house off the market and ‘ ‘ would not be selling at the present time.” He called Mrs. Douglas and she told him she had seen other property she intended to purchase. Later in July the property was sold and title taken in the name of Arthur Douglas. Mrs. Martin admitted that she had listed the house, although she said the listing was for $20,000. She admitted that Neale and Mrs. Douglas came to her house, but denied that they had come to see the house. Neale, she explained, was in pain, and she gave him some aspirin. She testified that “ in March or April ” Douglas saw her husband while the latter was working out in the yard, and asked if the house was for sale, and that they entered into a contract for the sale in April for $19,000. Ernest B. Martin testified he saw Douglas while he was working in the yard ‘ ‘ in March or the end of February ”; that he came by, asked if any houses in the neighborhood were for sale, Martin said his house was; the house was sold to Douglas, and the closing took place on June 23.
Mrs. Douglas admitted that she told Neale she was looking for a place and that Neale took her to Martin’s house, but she was careful to point out that she was looking for a place for herself, not for her husband. The house, she pointed out, was sold to Mr. Douglas, not to her. ‘ ‘ I am still looking for a house for myself ”, she said pointedly.
Plaintiff seeks commissions on the basis of 5% of the purchase price in accordance with the rules and regulations of the Beal Estate Board.
Defendants contend that the plaintiffs failed to sustain the burden of proof — that the sale was consummated because of plaintiffs’ efforts, and that they were the effectuating instrumentality of the sale. Their attorney points out that there is no proof that Inez Douglas discussed the premises with Arthur Douglas, her husband, or that she was acting as agent for her husband. There was no meeting of the minds between Inez Douglas and the defendants; that there was no proof that the plaintiffs procured Arthur Douglas, and the defendants had the right to sell the premises to anyone not procured by the plaintiffs. He relies upon a portion of the opinion of the Court of Appeals in Sibbald v. Bethlehem Iron Co. (83 N. Y. 378, 381) as follows: “ In Wylie v. Marine National Bank (61 N. Y. 416) it was held that to entitle the broker to commissions, he must produce a purchaser ready and willing to enter into a contract on the employer’s terms. This implies and involves the agreement of buyer and seller, the meeting of the minds, produced by the agency of the broker.”
*637 However, there was a meeting of the minds of the Martins and Douglas. They did enter into a contract for sale in April and the sale was consummated in June. The fact that Mrs. Martin terminated the agency in April when she advised Neale the house was no longer on the market does not affect the broker’s right to commissions.
The Court of Appeals in Sibbald v. Bethlehem Iron Co. {supra) pointed out:
“ [I] f without effecting an agreement or accomplishing a bargain, he [the broker] abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions ” (p. 383).
“ This, however, must be taken with one important and necessary limitation. If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind after the purchaser, ready and willing, and consenting to the prescribed terms, is produced; or if the latter declines to complete the contract because of some defect of title in the ownership of the seller, some unremoved incumbrance, some defect which is the fault of the latter, then the broker does not lose his commissions. And that upon the familiar principle that no one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance. But this limitation is not even an exception to the general rule affecting the broker’s right, for it goes on the ground that the broker has done his duty, that he has brought buyer and seller to an agreement, but that the contract is not consummated, and fails through the after-fault of the seller * * =:? Where no time for the continuance of the contract is fixed by its terms, either party is at liberty to terminate it at will, subject only to the ordinary requirements of good faith. Usually the broker is entitled to a fair and reasonable opportunity to perform his obligation, subject of course to the right of the seller to sell independently. But that having been granted him, the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith, and as a mere device to escape the payment of the broker’s commissions.
“ Thus, if in the midst of negotiations instituted by the broker, and which were plainly and evidently approaching success, the seller should revoke the authority of the broker, with the view of concluding the bargain without his aid, and avoiding the payment of commissions about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal. But if the latter *638 acts in good faith; not seeking to escape the payment of commissions, but moved fairly by a view of his own interest; he has the absolute right before a bargain is made while negotiations remain unsuccessful, before commissions are earned, to revoke the broker’s authority, and the latter cannot thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though, to some extent, the seller might justly be said to have availed himself of the fruits of the broker’s labor ” (pp. 383-385; emphasis supplied).
Upon all the credible evidence, the court finds:
(a) The negotiations were continuously prosecuted by the broker’s salesman, and were at no time abandoned by him until his agency was terminated by Mrs. Martin in April.
(b) That Mrs. Martin terminated the agency during the same month in which she and her husband entered into a contract of sale with Arthur Douglas.
(e) That such revocation of the broker’s agency occurred “ in the midst of negotiations instituted by the broker ” which were plainly and evidently approaching success, with the view of concluding the bargain without his aid, and avoiding the payment of commissions about to be earned.
The conclusion of the court is that ‘1 the due performance of his obligation, by the broker, was purposely prevented ” by the defendants.
Thus this case is distinguishable from the cases relied upon by defendants, where the broker’s authority was in good faith terminated by the principal, or the broker abandoned the negotiations at a time when the principal and purchaser had failed to arrive at a meeting of the minds (see Wylie v. Marine Nat. Bank, 61 N. Y. 415; Harper v. Shmulevits, 12 Misc 2d 568).
The Court of Appeals in Sibbald v. Bethlehem Iron Co. (83 N. Y. 378), after reviewing the authorities, stated at page 382: “ It was not meant by these cases, and we do not mean, that the broker must of necessity be present and an active participator in the agreement of buyer and seller when that agreement is actually concluded. He may just as effectually produce and create the agreement, though absent when it is completed and taking no part in the arrangement of its final details.”
Accordingly, the courts have held if the broker procures a buyer ready, willing, and able to carry out the terms of the sale, and the sale is actually entered into between the seller and the buyer produced by the efforts of plaintiff, the broker earns his commission even though the seller ultimately negotiates with the buyer produced by the broker and accepts a lower price than *639 originally asked by the seller, and the broker has not abandoned his agency nor the seller terminated same in good faith prior to the consummation of the sale (Martin v. Silliman, 53 N. Y. 615; Hunt v. Becker, 173 App. Div. 9; Southwick v. Swavienski, 114 App. Div. 681; Levy v. Coogan, 16 Daly 137; Fawning v. Maggi, 127 N. Y. S. 2d 152; Salzano v. Pellillo, 4 A D 2d 789; Smith v. Welson, 9 Misc 2d 224; Gash v. Diamond, 208 Misc. 712; see Restatement of Law of Agency, vol. 2, ch. 14, pp. 1048-1049, 1051-1052).
The evidence with respect to the issue as to whether Arthur Douglas, in whose name title was eventually taken, was produced by or through the efforts of the plaintiffs is conflicting. However, the credible testimony is sufficient to sustain plaintiffs ’ burden of proof.
Similar attempts in the past to avoid the payment of broker’s commissions have met with deserved failure (cf. Lloyd v. Matthews, 51 N. Y. 124; Southwick v. Swavienski, 114 App. Div. 681; Travis v. Bowron, 138 App. Div. 554; Salsano v. Pellillo, 4 A D 2d 789).
In Travis v. Bowron (supra) the broker communicated the listing to one Hopkins. His wife’s grandfather ultimately took title. The Appellate Division (2d Dept.) said at page 556: “ If the sale had been directly to Hopkins, inasmuch as plaintiffs were the means of bringing the property to his attention and of bringing him and the owners of the property into communication, in consequence of which a sale resulted, the fact that plaintiffs were not present when the final negotiations were completed would not deprive them of their right to commissions. (Lloyd v. Matthews, 51 N. Y. 124.) When a broker calls the attention of a prospective purchaser to property which he has been authorized to offer for sale, and communicates that fact and the name of such purchaser to the owner, the owner cannot defeat the broker’s claims to commission by taking up and completing the negotiations himself, unless before so doing he in good faith terminates the contract of employment. If the deed to Lawrence and the subsequent deed from him to Hopkins were only intended to cloak and hide the real transaction, the result would be the same as if the sale had been made to Hopkins directly. But if Hopkins as the agent of Lawrence obtained from plaintiffs knowledge as to this property, through their efforts was induced to examine the same, expressed himself as satisfied therewith, and communicated such information and approval to Lawrence, who thereafter purchased the same without other information upon the subject, and while the brokers’ contract of employment was unrevoked, the owner would be *640 liable to pay the brokers for their services. It was possible for the jury to find that such was the case. It is true that there is no direct evidence that Hopkins did communicate to his wife’s grandfather the knowledge which he had acquired from plaintiffs with regard to this property. The circumstances point strongly in that direction.” And at page 557: “When the circumstantial evidence on the one side is so strong and the denial on the other is so weak, vague and indefinite, the most that can be claimed by the defendants is that a question of fact arose for the jury.”
In Southwick v. Swavienski (supra) the broker communicated with the purchaser who ultimately took title, and introduced him to the husband of the defendant. The defendant claims that she had no knowledge of the agreement made by her husband with the purchaser. The Appellate Division (4th Dept.) in that case, at page 683, said: “ To entitle a broker to compensation it is sufficient that a sale be effected through his agency as its procuring cause; and if his communications with the purchaser are the means of bringing him and the owner together, and the sale results in consequence, the compensation is earned. It is not necessary that the purchaser be made known to the owner as the broker’s customer, if he is so in fact. (Lloyd v. Matthews, 51 N. Y. 124; Hanford v. Shapter, 4 Daly, 243.) Where the broker is the procuring cause of the sale it is immaterial when the conveyance is made. (Mooney v. Elder, 56 N. Y. 238, 241.) Where the communications of a real estate broker with a purchaser are the means of bringing him and the owner together and a sale results in consequence, the broker is entitled to commissions, nor can he be deprived of them by the action of the owner in subsequently taking the matter into his own hands. (Hobbs v. Edgar, 23 Misc. Rep. 618.) ”
See, also, Salzano v. Pellillo (supra) wherein the Appellate Division (2d Dept.) said at page 790: “ There is a rule that when a broker opens negotiations between parties but, failing to bring the customer to the terms specified by the owner, abandons them and the owner subsequently sells to the same person, the owner is not liable to the broker for commissions (Wylie v. Marine Nat. Bank, 61 N. Y. 415; Teves v. Thieringer, 281 App. Div. 752). But it does not appear that the trial court’s determination was based on the theory that the broker considered negotiations as hopeless and abandoned them or that negotiations between respondent and the purchasers were definitely abandoned or terminated as unsuccessful albeit temporarily. It does not appear that respondent ever terminated appellant’s oral contract of employment. A judgment founded upon an *641 untenable theory of law should not be sustained (Rives v. Bartlett, 215 N. Y. 35, 37) o For a broker to earn Ms commission, it is sufficient that a sale is effected through Ms agency as the procuring cause. If he brings the parties together and the sale results in consequence, the commission is earned although the broker had no part in the negotiations between the owner and the purchaser (Travis v. Bowron, 138 App. Div. 554; Sussdorf v. Schmidt, 35 N. Y. 319; cf. Sibbald v. Bethlehem Iron Co., 83 N. Y. 378).”
Accordingly, plaintiffs are entitled to compensation. However, I am not satisfied that plaintiffs have sustained their burden of proof that the defendants agreed to pay any specific amount as commissions, nor that they agreed to pay the commissions established by The Bronx Real Estate Board. “ WMle the Real Estate Board may undoubtedly make rules and regulations governing and binding upon its members, they are not binding upon, nor can they be enforced against, non-members, much less can they be held to constitute a rule of evidence binding or controlling the courts in trials (Cross, the Law of Real Estate Brokers, p. 235) ” (Dickstein, J., in Wertkin v. De Pasquale, 70 N. Y. S. 2d 225, 226 [Supreme Ct., Bronx County]).
I, therefore, determine the broker’s compensation on a quantum meruit basis (Bierman v. Barbieri, 124 Misc. 157; Wertkin v. Be Pasquale, supra; Hotchkiss v. Kuchler, 86 App. Div. 265). Judgment for the plaintiffs for $500 with interest as demanded in the complaint.