(173 App. Div. 9)

## HUNT v. BECKER.

(Supreme Court, Appellate Division, Fourth Department. May 10, 1916.)

1. BROKERS ⬳57(2)—COMPENSATION—RIGHT.

The fact that property is sold to a customer produced by a broker for a sum less than that originally stipulated between the vendor and the broker does not defeat the broker's claim for commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. ⬳57(2).]

2. TRIAL ⬳273—INSTRUCTIONS—EXCEPTION—TIME FOR TAKING.

Under Code Civ. Proc. §§ 992, 995, providing that an exception may be taken to a ruling upon a question of law, in a charge given to the jury before verdict is returned, defendant was within his rights in taking an exception to the charge after retirement of the jury, but before a verdict was rendered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 680–682; Dec. Dig. ⬳273.]

3. TRIAL ⬳187(4)—CONDUCT OF TRIAL—REMARKS OF JUDGE.

In a broker's action for commissions, where there was a sharp conflict in the evidence, remarks of the trial judge that one side was telling something which was not true with regard to an alleged telephone conversation, that without attempting to say where the truth lies the people on one side are absolutely unfit to associate with decent, honest, reputable people, and that it was disheartening to have people coming into court and deliberately falsifying questions of fact, was improper, as commenting on the character of the witnesses.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 419; Dec. Dig. ⬳187(4).]

Appeal from Trial Term, Erie County.

Action by Charles S. Hunt against Louis Becker. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

E. C. Schlenker, of Buffalo, for appellant.
Walter C. Newcomb, of Buffalo, for respondent.

DE ANGELIS, J. The plaintiff has recovered a judgment upon the verdict of the jury for commissions on the sale of real estate negotiated by him for the defendant. The peculiarity of the case is that the real estate, the subject of the sale, belonged to the Jefferson Exhibition Company, a corporation of which the defendant was the president, although the complaint alleges that the defendant was the owner of the real estate. The trial court submitted to the jury the question of the defendant's liability upon two theories, to wit: (1) That the contract was actually made by the defendant as an individual; and (2) assuming that the defendant was acting as agent for the corporation, the owner of the property, such ownership was not disclosed to the plaintiff.

The defendant claims that the proof did not establish a cause of action against him in any view that might be taken of it, that he did

not have a fair trial, and charges that many errors were committed by the trial court to his injury. The property involved is a picture theater, with the lot on which it stands, situate in the city of Buffalo, and known as the Linden Theater.

The complaint sets forth an express agreement, made about May 24, 1914, whereby the defendant placed the property in the hands of the plaintiff to sell, and agreed to pay the plaintiff a commission of 2½ per cent. on the purchase price in the event of the plaintiff's securing a purchaser of the property; that between May 24 and June 1, 1914, the plaintiff interested one M. A. Myers, of the M. A. Myers Amusement Company, in the property, and, as the result of plaintiff's negotiations, the defendant sold and transferred the possession of the property to the M. A. Myers Amusement Company for the sum of $40,-000; that the plaintiff was the procuring cause of the sale; and that there was due the plaintiff by reason of the premises the sum of $1,000. The answer was a general denial.

The plaintiff was a real estate broker, doing business under the name of the Hunt's Business Agency, and had in his employ one Chambers, who was authorized to make contracts for the plaintiff. The plaintiff had a customer who desired to purchase a picture theater. The plaintiff asserts that the contract upon which the claim for commissions is based was made in a conversation over the telephone between Chambers and the defendant. Chambers testified that he called the defendant and informed him that the plaintiff had a customer who wanted to buy a theater property, and, after some preliminary talk, the defendant told Chambers that, if he would get for him $40,000 for the Linden Theater, he would sell it, and he would not sell it for anything less. The language attributed by Chambers to the defendant was:

"Go ahead; if you can get me $40,000 for it, I will sell it. That is what I want; I wouldn't sell it no less."

Chambers testified that, in the talk over the telephone, the commissions were to be 2½ per cent. in case of a sale. He testified on cross-examination that no time was mentioned within which the agency was to cease, and it was not an exclusive agency. Chambers testified that he got certain information as to the property from the defendant in the talk over the telephone, and, making use of certain other information, he called one Pierce over the telephone, who was the agent for the customer, and told him to look the property over. This was the next day after the talk with the defendant. Chambers further testified that Pierce replied that he would go right over to the theater, and thereupon he (Chambers) called the defendant by telephone and stated that Pierce was coming to see him, and the defendant responded:

"All right; I will be here all the afternoon."

The plaintiff called Pierce as a witness, who testified that he found the defendant at the theater, and defendant asked him if he had been sent by the Hunt Agency, and he replied that he had not, but had been sent by Chambers. It appears that neither the plaintiff nor Chambers

did anything more in the premises until the plaintiff made his claim for commissions.

The defendant testified that he never had any talk with Chambers or Pierce on the subject of the Linden Theater. One Martin Pleuther, the stepson of the defendant, testified that he had charge of the Linden Theater and carried on negotiations with Merlin A. Myers and Pierce, his agent, resulting in a lease, dated May 24, 1914, executed between the Jefferson Exhibition Company, lessor, by the defendant, as its president, and M. A. Myers, lessee. This lease was put in evidence. The term was five years to begin June 1, 1914, and the rental $6,500 a year, payable in weekly installments in advance. The lease contained an option to the lessee to purchase the theater within the period of a year from its date for $40,000, to be paid by the assumption of a mortgage of $12,000, the execution of a purchase-money mortgage for $11,000, and $17,000 in cash. It appears that the lessee entered into possession of the premises, and, negotiations having taken place, without the intervention of the plaintiff, the Jefferson Exhibition Company executed and conveyed to the M. A. Myers Amusement Corporation a conveyance of the theater in question, which was acknowledged December 21, 1914, and recorded December 22, 1914. The consideration for the purchase was $38,000, to be paid by the assumption by the grantee of an outstanding mortgage of $11,000, the giving by it of a second mortgage for $9,900, and payment by it to the grantor of $17,000, in cash, less a deduction for a rebate of interest.

[1] 1. The appellant insists that, assuming the contract to have been made just as claimed by the plaintiff, there was no fulfillment of it on his part, for the reason that he failed to produce a customer to buy the property for $40,000. But the answer to this proposition is that the agency of the broker was not revoked, and the fact that the property was sold to the customer produced by him at a sum less than that originally stipulated does not defeat his claim for commissions. Southwick v. Swavienski, 114 App. Div. 681, 99 N. Y. Supp. 1079, following Levy v. Coogan, 16 Daly, 137, 9 N. Y. Supp. 534.

[2, 3] 2. The appellant argues that the record discloses that the trial judge, in his charge, erred in commenting on the character of witnesses. In view of the fact that the defendant not only absolutely denied the telephonic conversations with Chambers, but he and members of his family contradicted the testimony of Chambers and Pierce as to circumstances favorable to the plaintiff related by them, there comes for our consideration, from the comments that were made by the trial judge upon the character of the witnesses, the question whether the course of the trial furnished the jury with the basis for applying those comments to the witnesses for the defense. We think that there is a substantial basis for the defendant's complaint in this respect, and that the learned trial judge, by inadvertence, gave expression to views outside the latitude of judicial discretion. We realize that judges are human, and not infallible, and we realize the possibility that the learned trial judge may have suffered annoyance in the course of the trial of this case. At the same time we cannot overlook the difficulty referred to. Although there are other portions

of the charge which are not free from criticism, we base our disapproval upon this language:

"But, gentlemen, men cannot differ as to whether a conversation occurred of this kind [referring to the alleged talk over the telephone] and what the subject of that conversation was and be honest. There cannot be any doubt about that. One side or the other—and I do not attempt to say where the truth lies at all—one side or the other is coming into court and telling something and telling it deliberately which is not true. One side or the other in this case, the people on one side or the other of this case, are absolutely unfit to associate with decent, honest, reputable people. You have got to go out and determine who it is, because one side or the other are not fit to do business with business men and do business on a level and be honest about it. And it is a disheartening thing, gentlemen, to think that anybody is coming into a court of justice and have a difference of opinion over their legal rights, not differing as to the law that governs them, but coming here and deliberately falsifying, that they may seek something or defend something which is wrong."

What preceded and followed these remarks might well have led the jury to believe that the criticism was directed against the witnesses for the defense. An exception was taken to these remarks, and we quote from the record what occurred between the court and the counsel for the defendant after the jury had retired to deliberate on their verdict:

"Mr. Schlenker: If your honor please, I want to take a couple more exceptions that have occurred to me since, and may I have them entered on the record?

"The Court: You may, if you will state it is after the jury has retired.

"Mr. Schlenker: I will. Counsel returns into court after the jury has retired and takes the following exceptions: I except to that part of the charge wherein the court charged the jury in substance that one or other of the witnesses who had been sworn were absolutely unfit to associate with business men or any other.

"The Court: That is an exception you ought to have taken in the presence of the jury, and then the jury would know that you felt the sting."

The counsel was within his rights in taking the exception before the jury rendered its verdict. Code of Civil Procedure, §§ 992, 995. But the better practice is to have the exceptions noted before the retirement of the jury, because that avoids recalling the jury in case of any modifications of the views expressed by the court. We do not think the record justified the learned judge in his characterization of those witnesses regarded by him as the offending witnesses. We think the court might have said that a verdict could be rendered either for the plaintiff or defendant without a finding on the part of the jury that any witness was "unfit to associate with decent, honest, reputable people." While we know that what was said by the learned trial judge after the jury retired could not have prejudiced the defendant's case, yet it affords additional evidence that the jurors were led to believe that the witnesses of the defendant were those animadverted upon by the judge.

We think that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to abide the event. All concur.