Arthur Wachtel, J.
Plaintiff sues to recover the sum of $550 “ as her share of commission ”. The complaint alleges as follows: “ Plaintiff, a duly licensed real estate saleslady, worked for the defendant, a duly licensed real estate broker, and as such brought about the sale of premises, 2315 Seymour Avenue, Bronx, New York, which sale was consummated on the 29th day of July, 1960.”
Plaintiff was employed as a real estate salesman on July 9, 1959 by the defendant. In August, 1959 she obtained a listing from one, Calandra, the owner of premises located at 2315 Seymour Avenue, Bronx, New York, whereby she was authorized to obtain a purchaser of the said premises for the price of $40,000. Plaintiff secured Mrs. Michaelian as a prospective purchaser in August and on August 18,1959 a binder was signed by the prospective purchaser at the price of $35,000. This was not acceptable to the seller and he did not sign the binder. Thereafter and on September 9, 1959 Mrs. Michaelian signed another binder at the price of $36,000, but this offer likewise failed to meet the seller’s approval and again he failed to sign this new binder. Thereafter and in September plaintiff secured a third offer for $37,000 from Mrs. Michaelian. On September 14, 1959 Calandra signed a binder obtained by another broker, one Joseph Fierro, to sell to another purchaser procured by the said broker at the price of $37,500.
The plaintiff testified that when she communicated the offer of $37,000 to Calandra, he told her he had a better offer and had signed a binder with Mr. Fierro. She further testified that subsequently she continued her negotiations with Mrs. Michaelian to obtain a better offer and in December, around Christmas, Mrs. Michaelian increased her offer to $40,000 and that when the plaintiff communicated this offer to Calandra, he said “ If I can break the other binder and take yours, I will ”.
Plaintiff further testified that negotiations were continued with Calandra’s attorney and Mr. and Mrs. Michaelian and that the prospective purchasers told her that the roof leaked in the sun parlor and certain damage had occurred and as a result they suggested that adjustment be made and the price set at $39,500 and that during these negotiations Calandra repeatedly advised plaintiff that he would like to sell the house to Mr. and Mrs. Michaelian if he could be relieved of the outstanding binder. Plaintiff’s testimony was substantially corroborated by Mrs. Michaelian and the latter further testified that the defendant *351 never showed her the house and all the defendant did was to call her in February and advise her that the people who had the binder with Fierro had backed out. Mrs. Michaelian then asked Mr. Newbauer where the plaintiff was and was told the plaintiff had gone south because her brother had been in an accident. Thereafter and on February 20,1960 a binder was signed by the Michaelians for $39,500 for the Calandra house, the reduction in selling price being accounted for by reason of the leak in the roof of the sun parlor which had caused damage, a contract was entered into on February 27, 1960 and the closing took place on July 29, 1960 with the defendant as broker. The defendant received a brokerage fee of $1,000.
Plaintiff claims that her employment agreement with the defendant provided for the payment of one-half commission on all sales brought about by her and in addition 10% of defendant’s half of the commission if the plaintiff obtained the listing. The defendant contended that the agreement was for 50% commission and not for an additional 10% of the defendant’s one half, so that the maximum the plaintiff wmuld be entitled to would be $500.
The jury brought in a verdict of $500 in favor to the plaintiff.
Defendant now moves to set aside the verdict.
The rights of the parties are fixed as of the date of the cancellation of the plaintiff’s permit, namely, January 11, 1960 and plaintiff is entitled to recover on the contract theory if her right to commissions was earned as of that date . (See Clair v. Kall & Kall, 23 Misc 2d 568; Calhoun v. Banner, 254 N. Y. 325; Holding Co. v. Reis, 240 N. Y. 424; Real Property Law, §§ 442, 442-a.)
Were plaintiff’s commissions earned as of January 11, 1960? Prior to that time the seller, Calandra, had in effect said, “ I will accept your purchaser if I am relieved of the binder I signed with Fierro’s purchaser.” Shortly after plaintiff’s discharge Calandra was advised that Fierro’s purchaser had withdrawn, and in February he entered into a contract with the Michaelians.
The question is whether the negotiations between plaintiff and Calandra were abandoned prior to January 11, 1960 and whether Calandra revoked plaintiff’s and defendant’s agency prior to the time in February when he entered into the contract with the Michaelians.
Defendant’s attorneys state in their memorandum, “ Defendant does not take the position that plaintiff is not entitled to recover because the sale was not consummated until July 29, 1960. Defendant takes the position, as established by the undisputed facts at the trial, that at the time of plaintiff’s discharge *352 the plaintiff’s deal was dead. There is no other issue in the ease. ’ ’
Was the deal dead as of January 11, 1960, the date of the termination of the plaintiff’s license? Did the negotiations in February and thereafter with defendant constitute a new deal? If these are the facts, plaintiff did not earn her commission as of January 11, 1960. (See Sibbold v. Bethlehem Iron Co., 83 N. Y. 378.) But if the negotiations between Calandra and the defendant in February and thereafter continuing on to contract and sale were a continuation of the deal initiated and prosecuted by the plaintiff and the plaintiff did not abandon her negotiations with the seller prior to January 11, 1960 and at no time prior to the eventual contract and sale did the seller revoke the agency of plaintiff or her employer, the defendant, then the plaintiff would be entitled to recover under the rule stated by the Court of Appeals in Sibbold v. Bethlehem Iron Co. (supra, p. 382) as follows: “ It was not meant by these cases, and we do not mean, that the broker must of necessity be present and an active participator in the agreement of buyer and seller when that agreement is actually concluded. He may just as effectually produce and create the agreement, though absent when it is completed and taking no part in the arrangement of its final details.”
Accordingly, the rule has developed that if the broker procures a buyer ready, willing and able to carry out the terms of the sale, and the sale is actually entered into between the seller and the buyer produced by the efforts of plaintiff, the broker earns his commission even though the seller ultimately negotiates with the buyer produced by the broker, and accepts a lower price than originally asked by the seller, provided the broker has not abandoned his agency nor the seller terminated same in good faith prior to the consummation of the sale. (See Martin v. Silliman, 53 N. Y. 615; Hunt v. Becker, 173 App. Div. 9; Southwick v. Swavienski, 114 App. Div. 681; Levy v. Coogan, 16 Daly 137; Fanning v. Maggi, 127 N. Y. S. 2d 152; Salzano v. Pellillo, 4 A D 2d 789; Smith v. Welson, 9 Misc 2d 224; Cash v. Diamond, 208 Misc. 712; 2 Restatement, Agency, pp. 1048-1049,1051-1052.)
Defendant’s attorney points to the outstanding Fierro binder. How, he asks, could plaintiff have earned her commission while this binder was still in effect? Did not this effectuate a revocation of plaintiff’s agency? After the binder was revoked, was there not a new situation, a new deal? The plain answer to this argument is that this very question was presented to the jury. Implicit in their verdict was a finding that the negotiations with the defendant in February and thereafter continuing to the eon- *353 summation of the sale in July were a continuation of plaintiff’s negotiations and that Calandra had not in fact revoked plaintiff’s agency prior to January 11, 1960, nor the defendant’s agency thereafter and up to the time of contract and sale.
Did the outstanding Fierro binder nullify plaintiff’s efforts? It could have. But the fact is that Fierro’s purchaser did withdraw and did cancel the binder Calandra signed with the said purchaser and the fact remains that the plaintiff did produce a buyer who at all times remained ready, able and willing to perform on the seller’s terms and that the plaintiff did not abandon negotiations at any time prior to her dismissal and the seller never revoked her agency prior thereto, nor did he revoke her employer’s, the defendant’s, agency at any time prior to the consummation of the sale. At least, this was the finding implicit in the jury’s verdict. The court cannot say that these findings were contrary to the weight of the evidence.
However, an additional theory was presented to the jury. That was the theory of tortious interference with the plaintiff’s contract right. This theory was interposed as a result of the application of plaintiff’s attorney to amend the complaint so as to add such additional theory. The attorney for the plaintiff relied in support of this theory upon the case of Williams & Co. v. Collins Tuttle & Co. (6 A D 2d 302). The court finds that this theory was not supported by the weight of the evidence within the purview of Williams & Co. v. Collins. The-defendant testified that she discharged the plaintiff during the Christmas week of 1959 because the plaintiff could not give full time to her job. Nothing in the testimony of the plaintiff nor in the record supports any inference of any sinister scheme to deprive the plaintiff of her commissions, which in any way approaches the factual situation in the Williams case. Any attempt to draw such an inference is sheer speculation.
Judge Breitel, after reviewing the authorities, said at page 308, ‘ ‘ True, plaintiff will have to prove that the alleged tortious interference (namely, the fraudulent misrepresentation, the design for kickbacks, and the concerted action) caused the loss of commissions. Indeed, it must show that it lost commissions and not merely a wishful dream of commissions. In this connection the proof as to the stage reached in the negotiations with the tenant will be material, and even critical. But, again, there is no arbitrary dividing line which demarks one stage of negotiations from another which, as a matter of law, must be reached before damages can be proven. There is nothing special about real estate brokerage which suggests or requires that protection be denied because the intentional injury is inflicted *354 by means which anticipate, rather than await, future development of pending negotiations. If the intent and predatory scheming of defendants were deliberate and effective enough to exploit the first broker’s efforts, short of consummation, and were so designed, the necessary link of causation and incidence of damage may be supplied and liability for such purposeful and effective interference imposed.” No such predatory scheme with the design of exploiting plaintiff’s efforts, obtaining the fruits thereof and depriving her of her right to commissions can properly be inferred from the evidence without entering the area of speculation and surmise.
Where the case is submitted to the jury on more than one theory, one of which is unsupported by the evidence, and the jury renders a general verdict and it is not possible on the face of the general verdict to determine on what theory liability was found, a new trial must be ordered. (See Morgan v. Robinson, 3 A D 2d 216; Marks v. New York City Tr. Auth., 11 A D 2d 993.)
Accordingly, the court is compelled to grant the motion to set aside the verdict and to order a new trial. Said new trial is directed to be held on February 27,1961.